Hervey, J., delivered the opinion of the Court in which Keller, P.J., Keasler, Alcala, Richardson, Yeary, Keel, and Walker, JJ., joined.
*94 The question in this case is whether the court of appeals erred when it affirmed the trial court's granting of a new trial on ineffective-assistance-of-counsel grounds. We conclude that the court of appeals did err because the trial court should not have granted the motion. As a result, we reverse the judgment of the court of appeals, vacate the trial court's order granting a new trial, and order the judgments of convictions and associated sentences reinstated.
BACKGROUND
After the State's first witness, Officer Ruben Ramirez, was sworn-in and the trial court asked him to take a seat, a juror said, "Judge, I know [the witness]. I went to school with him." The witness responded, "Yeah, I know him." The jury was excused, and the juror was questioned by the judge and both parties. The trial judge made a finding that the juror was not biased (and that the trial would proceed with twelve jurors) but told the parties that they could agree to proceed with only eleven jurors.[1] Defense counsel said that he wanted to proceed with eleven and that, if the juror was not removed, he would request a mistrial. The State agreed to the defense's request, and the juror was removed. The eleven-member jury acquitted Gutierrez of two charges but convicted him of three others. Gutierrez filed a timely motion for new trial arguing that his attorney was ineffective because he advised Gutierrez to proceed with eleven jurors, and but for counsel's erroneous advice, he would have requested a mistrial so a new jury of twelve could be impaneled. The trial court granted Gutierrez's new-trial motion without entering any relevant findings of fact or conclusions of law.[2]
The State appealed, and the court of appeals agreed with Gutierrez that the trial court did not abuse its discretion. According to the court of appeals, a mistrial likely would have been granted had one been requested, because the trial court could have reasonably found that Gutierrez's right to a jury trial by twelve was abridged and that he was harmed by that violation. The State filed a petition for discretionary review in this Court, which we granted, asking us to decide whether the court of appeals was mistaken when it affirmed the trial court's granting of a new trial.
Facts
Rene Gutierrez, Appellee, was kicked out of a bar called the Leaping Lizard for *95 fighting with another customer at about one o'clock in the morning. After he was removed, Gutierrez tried to get back into the bar. As he approached one entrance, a person named John Richardson tried to close the door, but Gutierrez pulled out a knife and tried to stab him. Richardson was able to avoid Gutierrez's lunge, and Gutierrez tried to enter though another door, but Walter Womack and Clinton Werner, who worked security for the bar, confronted him and told him to the leave the property. Gutierrez brandished the knife again and began waving it at Womack and Werner. The police were called, and Officer Ruben Ramirez responded. Ultimately, he arrested Gutierrez.
Ramirez decided that Gutierrez needed to be medically cleared before taking him to jail because one of his hands was bleeding. As Ramirez was transporting Gutierrez to the hospital, Gutierrez began spitting at Ramirez and hit him on his right shoulder. He also spit "all over the front" of Ramirez's car, so Ramirez restrained Gutierrez with a spit shield. After arriving at the hospital, Ramirez opened the back door of the car to take Gutierrez inside, but Gutierrez was lying down in the backseat and kicked Ramirez in the knee caps. Ramirez closed the door and radioed for backup. Later, after Gutierrez had been taken inside and was medically cleared, Ramirez took Gutierrez back to his car to transport him to jail. Gutierrez started spitting at Ramirez again.
Trial
A grand jury indicted Gutierrez with three counts of aggravated assault, one count of assault on a public servant, and one count of harassment of a public servant. Gutierrez elected for a jury to determine his guilt. After the jury was sworn in, the State called its first witness, Officer Ruben Ramirez. At that time, one of the jurors informed the judge that he went to school with Ramirez. The judge excused the remainder of the jury, and the attorneys and judge questioned the juror.[3] The juror stated that he could be fair and impartial even though he and Ramirez had mutual friends in high school and had seen each other every couple of years since graduating eighteen years before.
After the juror was questioned, defense counsel argued that the juror could not be fair and impartial. The trial judge disagreed and ruled that the juror would not be removed because no actual bias had been shown. Nonetheless, the judge told the attorneys that, if they agreed, he would allow them to proceed with eleven jurors. Gutierrez wanted the juror removed and said that he would request a mistrial if the juror was not removed. The State agreed to the request:
[COURT]: Mr. Gutierrez, at this time there's been a request-you have to waive-you have to specifically waive your right to having 12 jurors try your case. So, we can have 11 jurors try your case. Now, you have to waive that on the record. Do you want to be tried by 11 jurors, and we're going to dismiss [the juror], we're going to dismiss him from the jury, and that will leave 11. Do you want to be tried by those 11 jurors in there?
[DEFENSE]: May I talk to my client?
[COURT]: Yes, you may. He has to waive his right.
[DEFENSE]: I'm going to explain, Your Honor.
*96 [COURT]: All right. We'll be in short recess.
(Brief recess.)
[COURT]: All right. We're back on the record. Anyway, defense counsel, your motion?
[DEFENSE]: The motion is that we proceed with 11 jurors.
[COURT]: All right. Okay. The State?
[STATE]: The State would agree with going with 11 jurors.
[COURT]: All right. All right.
The eleven-member jury acquitted Gutierrez of assault on a public servant and one count of aggravated assault. He was convicted of harassment of a public servant and the two other counts of aggravated assault. Based on an enhancement to which Gutierrez pled true, the trial court sentenced him to 20 years' imprisonment on each count to run concurrently. He was not fined.
Motion for New Trial
Gutierrez filed a timely motion for new trial in which he raised numerous claims for relief. The only claim at issue here, however, is whether Gutierrez received ineffective assistance of counsel because he would have exercised his right to a twelve-member jury, but for his attorney's deficient advice that he should waive that right. The trial court held a hearing on the motion, at which Gutierrez testified in support of his claims. Trial counsel also testified. Gutierrez stated that, after the issue with the witness came up, he and his counsel discussed their options for a few minutes.[4] According to Gutierrez, counsel was in favor of proceeding with the twelve-member jury, but Gutierrez was hesitant. Ultimately, the defense decided to proceed with eleven jurors. Gutierrez could not remember whether counsel discussed the option of a mistrial with him, but he did not think so. According to counsel, he recommended that Gutierrez not proceed with a twelve-member jury given that one of the jurors knew the State's main witness because it would be damaging to the defense. He also testified, however, that he did not remember whether he advised Gutierrez about the option to request a mistrial, but he did remember not having enough time to discuss every possible consequence of proceeding with an eleven-member jury. He concluded by noting that, in 25 years of practicing criminal defense, he had never participated in a trial with eleven jurors.
The court granted Gutierrez's new-trial motion. The State requested findings of fact and conclusions of law, but the trial court only made a docket entry stating,[5]
Findings of Fact [and] Conclusions of Law: Counsel for [Gutierrez] was unprepared for trial, did no [investigation], interviewed no witnesses [and] [the court] finds [ineffective assistance of counsel]; court grants [the motion for new trial] also in the interest of justice; court finds [insufficient evidence] as to [the aggravated assault with a deadly weapon counts].
Appeal
The State appealed to the Corpus Christi Court of Appeals, asking it to vacate *97 the order of the trial court granting the motion for new trial. In relevant part,[6] the State argued that the trial court erroneously granted the motion because it misapplied the Strickland test. State v. Gutierrez , No. 13-13-00183-CR, 2015 WL 7820588, at *4 (Tex. App.-Corpus Christi Dec. 3, 2015) (mem. op., not designated for publication); see Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court of appeals disagreed, holding that the trial court did not abuse its discretion. Gutierrez , 2015 WL 7820588, at *9.
With respect to the deficiency prong, the State argued that the trial court did not make Gutierrez rebut the presumption that his trial counsel made a reasonable strategic decision to proceed with an eleven-member jury. Id. The court of appeals rejected that argument, explaining that,
The challenged action in this case concerns whether trial counsel adequately informed Gutierrez that he could urge a mistrial and, if granted, thereby secure his right to a twelve-member jury-not whether continuing with an eleven-member jury made strategic sense after trial counsel discovered that one of the twelve jurors might be friends with Gutierrez's alleged victim. Thus, the relevant question is whether the evidence at the new-trial hearing rebutted the presumption that trial counsel provided professionally reasonable advice before Gutierrez agreed to forfeit his right to have twelve jurors decide his fate.
Id. at *6 (footnote omitted, internal citation omitted). With this clarification, the court concluded that Gutierrez rebutted that presumption because he testified that he was never told that he had the right to a twelve-member jury or that he could try to preserve that right through a motion for a mistrial. Id. The court of appeals also noted trial counsel's concessions that they had to make a quick decision because the trial was about to begin and that he could not remember whether he spoke to Gutierrez about the option of a mistrial. Id.
Turning to the issue of prejudice, the court of appeals concluded that the trial court did not abuse its discretion when it found that Gutierrez was prejudiced by his counsel's deficient conduct. Id. at *8. According to it, the trial court could have found that (1) had the defense requested a mistrial, the court would have granted the request, and that (2) the State's burden to prove Gutierrez's guilt was lessened because the State had to convince only eleven people that he was guilty instead of twelve. Id. at *9. The court of appeals also referred to comments from the removed juror that he knew Officer Ramirez, that he "respected" Ramirez, and that he believed Ramirez was a "good guy." Id.
Petition for Discretionary Review
We granted the State's petition for review to decide whether the court of appeals "properly appl[ied] either prong of Strickland v. Washington when it affirmed a new trial based on defense counsel's allegedly deficient advice to proceed with an 11-member jury[.]"
NEW TRIALS
We review a trial court's grant or denial of a motion for new trial for an *98 abuse of discretion. State v. Herndon , 215 S.W.3d 901, 906-07 (Tex. Crim. App. 2007). The court abuses its discretion only if its ruling is not supported by any reasonable view of the record. Riley v. State , 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). When deciding whether a trial court erred in granting a new-trial motion, we view the evidence in the light most favorable to the court's ruling and give almost total deference to the court's findings of historical fact. Id. at 458. When the court does not issue findings of fact, however, we will imply findings necessary to support the ruling if they are reasonable and supported by the record. Johnson v. State , 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).
INEFFECTIVE ASSISTANCE OF COUNSEL
To prevail on an ineffective-assistance-of-counsel claim, the defendant must prove that his trial counsel's performance was deficient and that he was prejudiced by the deficiency. Strickland , 466 U.S. at 687, 104 S.Ct. 2052 ; Ex parte Martinez , 330 S.W.3d 891, 900 (Tex. Crim. App. 2011). When, as in this case, the alleged deficiency is defense counsel's failure to advise, to prove prejudice the defendant must show that, absent counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Riley , 378 S.W.3d at 458. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. Id.
ANALYSIS
We resolve this case on the issue of prejudice. For purposes of our analysis, we will presume that Gutierrez's trial counsel was deficient, and we view the evidence in the light most favorable to trial court's granting of a new trial.
Gutierrez first argues that he was prejudiced because, had his attorney properly advised him about his right to be tried by a twelve-member jury, he would have requested a mistrial, and that request likely would have been granted. The court of appeals agreed with this argument.[7] Second, Gutierrez argues that he was prejudiced because the trial court would have erred if it had denied a mistrial because the juror withheld material information that prevented Gutierrez from intelligently exercising his peremptory strikes and challenges for cause.
*99 For reasons we expound upon below, both of Gutierrez's arguments fail. Even when the evidence is viewed in the light most favorable to the trial court's granting of a new trial, the record cannot support an implied finding that the court likely would have granted a mistrial at the time of trial, nor can it support a finding that the trial court would have abused its discretion if it denied a mistrial based on juror bias.
The Record Does Not Support an Implied Finding that the Trial Court Likely Would Have Granted a Request for a Mistrial
According to the court of appeals, the record supported that a mistrial likely would have been granted had a request been made. Gutierrez , 2015 WL 7820588, at *8. We disagree. The court misapplied the applicable standard of review when it decided, in the abstract, whether any trial court could have granted a mistrial. Id. The court of appeals may be correct that some trial courts could have granted a mistrial under these circumstances, but the issue in this case is not whether any trial court faced with similar circumstances likely would have granted a mistrial, it is whether this court likely would have granted a mistrial at the time of trial. We conclude that, even when viewed in the light most favorable to the granting of a new trial, the record does not reasonably support a conclusion that this trial court likely would have granted a mistrial when the juror issue came up.
The judge's intention was to move the case forward. There is no indication that he intended to declare a mistrial or grant a mistrial if requested by the defense. In fact, the record indicates the opposite. After the juror was questioned by the judge and both parties about any actual bias he may have had, the judge specifically found that the juror was not biased. It would make little sense for the judge to rule that the juror is not biased but then immediately thereafter grant Gutierrez's request for a mistrial based on juror bias. We recognize that the trial court granted the motion for new trial, but even if the trial court had changed its mind by the time Gutierrez filed the new-trial motion and had decided that the juror was biased, that is not indicative of whether the trial judge likely would have granted a mistrial at the time the bias issue arose. Because the record cannot support an implied finding that the trial court likely would have granted a mistrial had one been requested at the time of trial, even when viewing the evidence in the light most favorable to the granting of a new trial, the court of appeals erred when it concluded otherwise. Also, to the extent that the trial court granted the new-trial motion on that basis, it abused its discretion.
The Trial Court Would Not Have Abused Its Discretion If It Had Denied a Mistrial Request
Next, Gutierrez argues that he was prejudiced because his constitutional right to intelligently exercise his peremptory challenges and challenges for cause was violated. According to him, because his constitutional right to an impartial jury was violated, the trial court would have abused its discretion if it had denied a request for a mistrial. The State disagrees. It argues that the trial judge would not have abused its discretion because the juror was not actually biased and that finding is supported by the record.
1. Defendant's Right to an Impartial Jury Based on Withheld Material Information
a. The Law
When a juror withholds material information during voir dire that the *100 defense, using due diligence, could not uncover, the parties are denied the opportunity to exercise their challenges, which hinders their selection of an impartial jury. Franklin v. State , 138 S.W.3d 351, 355-56 (Tex. Crim. App. 2004) ( Franklin IV ); Salazar v. State , 562 S.W.2d 480, 482 (Tex. Crim. App. [Panel Op.] 1978). One court of appeals has held that this is a violation of a defendant's right to an impartial jury. Franklin v. State , 23 S.W.3d 81, 82 (Tex. App.-Texarkana 2000, no pet.) ( Franklin III ). But a violation, by itself, is insufficient for reversal. The defendant must also have been harmed by that constitutional violation. Franklin IV , 138 S.W.3d at 358 ; TEX. R. APP. P. 44.2(a).
When deciding whether the withheld information is material, a juror's good faith is largely irrelevant. Franklin v. State , 12 S.W.3d 473, 478 (Tex. Crim. App. 2000) ( Franklin II ). The information need not prove that the juror is actually biased, but it must have a tendency to show bias. Franklin IV , 138 S.W.3d at 356. If the withheld information has a tendency to show bias, an appropriate procedure is to hold a hearing at which evidence should be adduced regarding whether the juror is actually biased.[8] Uranga v. State , 330 S.W.3d 301, 306 (Tex. Crim. App. 2010). This is a fact issue. Id. If a trial judge finds that the juror is not actually biased, and that finding is supported by the record, then the defendant has not been harmed by the violation of his constitutional right to an impartial jury. TEX. R. APP. P. 44.2(a) (even constitutional error is not harmful if a reviewing court finds beyond a reasonable doubt that the error did not contribute to the conviction). If, however, the judge finds that the juror is actually biased, the only remedy is a mistrial.[9] Franklin IV , 138 S.W.3d at 354. We review the trial court's determination of historical fact for an abuse of discretion (i.e., whether the juror was actually biased), and appellate courts should give almost total deference to the trial court's determination if it is supported by the record. See Guzman v. State , 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
b. Analysis
When reviewing a trial court's granting of a new trial, as we have previously stated, we view the evidence in the light most favorable to the granting of the new trial, and we review a court's factual finding of bias for an abuse of discretion. Thus, in this context, to show that the trial court would have erred in denying a mistrial, Gutierrez has to show that, when viewing the evidence in the light most favorable to the granting of the new trial, the court abused its discretion because no reasonable reading of the record supports the court's finding. To determine whether Gutierrez has met his burden, we must examine the record.
After Officer Ramirez, who was the State's first witness, was sworn in by the bailiff, the following series of events happened:
[JUROR]: Judge, I know Ruben. I went to school with him.
*101 [RAMIREZ]: Yeah, I know him.
[COURT]: Okay. All right.
[JUROR]: Sorry.
[COURT]: That's fine. Ladies and gentlemen, we're going to take a brief recess. Have a seat, sir.
[RAMIREZ]: Okay.
[COURT]: Would you-all, please, excuse us. Into the jury room.
[JUROR]: Do I stay here or do I go with them?
[COURT]: I'm going to have you go with them for right now.
[JUROR]: I'm sorry.
[COURT]: I'm going to have you go with them for right now.
[COURT REPORTER]: Juror, what's your name?
[JUROR]: Ruben Isaguirre.
[COURT]: And what was your juror number, do you remember?
[JUROR]: Thirty-two.
(Jury exits courtroom.)
[COURT]: All right. Do you-all want to bring him out here and talk with him about that?
[PROSECUTOR]: Yes, Your Honor, please.
( [Juror] enters courtroom.)
[COURT]: Come on in, sir. Come on up here. All right, sir. You're still under oath. Your name is?
[JUROR]: Ruben Isaguirre, Ruben Anthony Isaguirre
[COURT]: And, Mr. Isaguirre, you know Officer Ruben Ramirez?
[JUROR]: From school and from out and about when we see each other.
[COURT]: All right. State, you have any questions for Mr. Ramirez-I mean, Mr. Isaguirre?
[PROSECUTOR]: Sir, when we asked whether you know the possible witnesses-
[JUROR]: I didn't know his last name.
[PROSECUTOR]: You did not know. Okay. Now that you know Officer Ramirez is somebody you know, how well do you know him?
[JUROR]: We always greet each other when-like we're friends. I know we're not official friends, but I always respected Ruben. We'd see each other in the hallway at school, WB Ray High School. It's been years ago. I'm 37.
[COURT]: When did you graduate high school?
[JUROR]: 2000.
[COURT]: And you?
[RAMIREZ]: '94.
[JUROR]: It was the class of '94. I'm thinking about college. Sorry.
[RAMIREZ]: Thinking about college.
[COURT]: So you graduated in '94?
[JUROR]: Uh-huh.
[COURT]: Is that a "Yes"?
[JUROR]: Yes.
[COURT]: And you, sir?
[RAMIREZ]: Yes, sir.
[COURT]: Okay. So you-all both graduated at the same time? You-all knew each other?
[RAMIREZ]: Yes.
[COURT]: All right.
[JUROR]: We know the same kind of friends, too.
[COURT]: Okay.
[JUROR]: We kind of hang around the same click [sic], but we know mutual friends, too.
[COURT]: Right. Understood.
[PROSECUTOR]: Would the fact that you know Officer Ramirez interfere with *102 your jury duty, the oath you took that you're going to be fair and impartial?
[JUROR]: Oh, yeah, I can still be fair and impartial. I just wanted to let you know that I knew him because I didn't want it to affect the outcome later on.
[COURT]: Right. No, I understand.
[PROSECUTOR]: Nothing further from the State.
[COURT]: [Defense].
[DEFENSE]: I forgot your last name.
[JUROR]: Isaguirre.
[DEFENSE]: Isaguirre. Do you socialize with-
[JUROR]: No. I haven't seen Ruben in quite sometime [sic].
[RAMIREZ]: Yeah, quite some time.
[JUROR]: But I've always known him to be a good guy, but just my opinion.
[DEFENSE]: When-do you visit? Have you visited regularly?
[JUROR]: We haven't seen each other in many years.
[COURT]: Okay. After high school-did you-all associate in high school together?
[RAMIREZ]: Yeah.
[JUROR]: Yeah, in the hallway because, like I said, we knew each other through friends.
[COURT]: Oh, okay. So did you-all hang out together, play football together, shoot pool together, what?
[RAMIREZ]: Probably since high school I've probably seen him maybe about a half a dozen times-
[COURT]: Okay.
[RAMIREZ]: -at either a nightclub or like at restaurant or something.
[COURT]: Okay.
[JUROR]: He would be patrolling and I'd go up to him, "Hey, how are you doing?"
[COURT]: He's patrolling, and you're trolling?
[JUROR]: Yeah, I guess so. Yeah.
[COURT]: I'm just kidding.
[JUROR]: Okay.
[COURT]: All right. So I guess what these officers-or what these officers of the Court or these lawyers want to know is will the fact that he's a witness affect your impartiality in any way? Will you now be leaning toward the State because you know him, you know he's a great guy and he would never lie or anything like that, or does that increase-in other words, do you know him well enough to know you don't know his-in other words, can you assess his credibility based on what he testifies to right now or are you going to be giving him more credibility because of your relationship with him, a past relationship?
[JUROR]: That's a hard question. That's a hard question to answer because-
[COURT]: Well, I guess-you know, the standard question is-well, okay, [defense counsel], did you want-
[JUROR]: I can tell you, no, it's not going to affect me, but I hate to lie because-
[COURT]: Okay.
[DEFENSE]: I just have a question: Mr. Isaguirre, because you've known him in high school-
[JUROR]: Uh-huh.
[DEFENSE]: -and you say hi to him, do you consider him an acquaintance?
[JUROR]: Yes.
[DEFENSE]: And how long have you known that he's in law enforcement?
[JUROR]: For quite sometime [sic], because he's patrolled the nightclubs, and me and my wife would go to the nightclubs and see him there. And he would always be real social, because he's a social kind of guy.
*103 [DEFENSE]: Okay.
[JUROR]: So that's how I know him or think of him.
[COURT]: Do you ever see him making any arrests or apprehensions? You ever see him doing any work?
[JUROR]: I don't think so. I've never seen him make an arrest, mostly just patrolling.
[COURT]: Okay.
[DEFENSE]: And would your being acquaintances sway you as far as-
[JUROR]: Like I was telling-
[DEFENSE]: -questioning his truthfulness?
[JUROR]: I would say no, but I kind of want to say yes, too.
[COURT]: Okay. Any other questions?
[PROSECUTOR]: No, Your Honor.
[DEFENSE]: Your Honor-
[COURT]: Well, you're not going to go back there and tell what a swell guy he is and that he would never tell a lie or anything like that, are you?
[JUROR]: (Shakes head.)
[COURT]: Sir, you're shaking your head no, but the court reporter can't-is not-
[JUROR]: Yeah, I forget she's here sometimes, she's so quiet.
[COURT]: We're not telepathic. So you know you can't talk about your past relationship with this officer back there, you understand that?
[JUROR]: Yes.
[COURT]: Okay. And you're willing to listen and you're willing to listen to his testimony, and knowing that he's-his perception is maybe as fallible or as infallible as the next officer, or he may be capable of making a mistake, just like anybody else, and you're willing to-
[JUROR]: Yes.
[COURT]: -take that into account?
[JUROR]: Yes.
[COURT]: Okay. So you're not saying just because he's a police officer here testifying that you're going to believe what he says just because you know him?
[JUROR]: Yes.
[COURT]: Is that correct?
[JUROR]: Yes.
The record shows that the juror vacillated with regard to whether knowing Ramirez would affect his ability to be impartial. When a juror vacillates, a reviewing court's deference to the trial court's finding is at its apex because the finding hinges on credibility and demeanor evaluations, to which we are not privy on a cold record. Clark v. State , 929 S.W.2d 5, 9 (Tex. Crim. App. 1996). In such a situation, the trial court may excuse the veniremen for cause, or not, depending on demeanor, intonation, or expression, and the trial court's exercise of its discretion under such circumstances will be upheld on appeal. Id. While we are dealing with a sworn jury in this case, not a venirepanel, we find our jurisprudence regarding vacillating veniremen instructive and will follow it here.
This record is subject to conflicting, but reasonable, interpretations. While one judge may have found that the juror was not actually biased, another may have found that the juror was biased. For this reason, Gutierrez cannot prove that the trial court would have erred if it had denied a request for a mistrial because the record does not show that the only reasonable interpretation of the evidence is that the juror was biased.
CONCLUSION
Because the court of appeals misapplied the prejudice prong of the Strickland test for ineffective assistance of counsel, we *104 reverse the judgment of the court of appeals, vacate the trial court's order granting a new trial, and order the judgments of convictions and associated sentences reinstated.
Newell, J., concurred.

Tex. Gov't Code § 62.201 ("The jury in a district court is composed of 12 persons, except that the parties may agree to try a particular case with fewer than 12 jurors."); see Hatch v. State , 958 S.W.2d 813, 816 (Tex. Crim. App. 1997) (holding that Section 62.201 of the Government Code applies in criminal cases). In addition to the Government Code provision, Article 36.29 of the Texas Code of Criminal Procedure explains how to proceed if a juror dies or becomes disabled. Tex. Code Crim. Proc. art. 36.29(a). This case deals with only the Government Code provision.

There is a docket entry that purports to be the court's findings of fact and conclusions of law, but the short entry does not address the twelve-member jury issue and is, therefore, irrelevant to our analysis.

The juror explained that he did not know Officer Ramirez by name. He recognized Ramirez only once he saw him.

Gutierrez testified that the consultation lasted a few minutes and that the decision was made in the courtroom. He also testified that,
Well, I really didn't know the law. I just, basically, asked my lawyer if it was-basically, he said it was okay to proceed with 11 jurors, that it's been done before. But, like I said, if I would have been mentioned anything about a mistrial, I believe, being a Defendant being accused of this, I think I would have went for a mistrial.

Gutierrez did not argue that his counsel was ineffective because he was unprepared for trial or that his counsel failed to perform a reasonable investigation. He also did not specifically ask the trial court to grant a new trial in the interest of justice.

The State also argued that the verdicts were not contrary to the law and evidence. The court of appeals agreed. State v. Gutierrez , No. 13-13-00183-CR, 2015 WL 7820588, at *6 (Tex. App.-Corpus Christi Dec. 3, 2015) (mem. op., not designated for publication) (evidence was legally sufficient to support Gutierrez's convictions); see State v. Arizmendi , 519 S.W.3d 143, 153 n.1 (Tex. Crim. App. 2017) (Hervey, J., concurring) (an assertion that a verdict was contrary to the law and the evidence raises a challenge only to the sufficiency of the evidence).

The court stated,
Historically, a trial court's decision to declare a mistrial is a matter committed to the trial court's broad discretion; and such a decision should be accorded great deference on appeal. According great deference to the trial court, we find that the record supports a finding that a mistrial would have been warranted in this case, as the dismissed juror testified that he would need to "lie" under oath in order to say that his friendship with the police officer-whom he "respected" and regarded as a "good guy"-would not affect his ability to be a fair and impartial juror.
Because a mistrial would have likely been granted had one been requested, the trial court could have reasonably found that counsel's failure to urge a mistrial on Gutierrez's behalf ultimately deprived Gutierrez of his right to have his case decided by a twelve-member jury under the Texas Constitution. The trial court could have further found that this error lessened the State's burden to prove Gutierrez guilty beyond a reasonable doubt because, instead of having to convince twelve jurors that a conviction was warranted, the State only had to convince eleven. Thus, the trial court could have determined that but for trial counsel's error, which ultimately lessened the State's burden to prove Gutierrez guilty, a reasonable probability "sufficient to undermine confidence in the outcome" existed such that a new trial was necessary. We therefore conclude that the trial court did not abuse its discretion in finding that Gutierrez satisfied Strickland 's second prong.
Gutierrez , 2015 WL 7820588, at *9 (emphasis in original) (citations omitted).

See Franklin IV , 138 S.W.3d at 358 (failure of trial court to develop sufficient record for a reviewing court to conduct a harm analysis is reversible error because harm is presumed under the constitutional harmless-error standard).

Sometimes voir dire can be reopened to explore a veniremember's potential biases, but once the jury is sworn, the defendant's only remedy for a harmful violation of his right to an impartial jury is a mistrial. Franklin IV , 138 S.W.3d at 354 ; Camacho v. State , 864 S.W.2d 524 (Tex. Crim. App. 1993) (trial court did not abuse its discretion when it refused to reopen voir dire).