

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00249-CR
No. 07-19-00250-CR

_____

SANTOS ALCANTARA BARCENAS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 242nd District Court
Hale County, Texas
Trial Court Nos. B19916-1503 & B19937-1504; Honorable Kregg Hukill, Presiding

June 29, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

On September 28, 2015, pursuant to a plea bargain agreement, Appellant, Santos Alcantara Barcenas, was placed on deferred adjudication community supervision in trial court cause number B19916-1503, for a term of five years, for the offense of engaging in

organized criminal activity.[1]  On the same date, also pursuant to a plea bargain agreement, Appellant was convicted and placed on community supervision in trial court cause number B19937-1504, for the offense of possession of four grams or more, but less than 200 grams, of a controlled substance, to-wit: oxycodone.[2]  In that cause, Appellant was sentenced to five years of incarceration, with the period of incarceration being suspended in favor of community supervision for a term of five years, and a fine of $2,000.  Less than fourteen months later, in November 2016, the State filed a separate motion in each cause alleging Appellant had violated numerous conditions of his supervision and seeking the revocation of his community supervision.  The record reflects that while a warrant was issued in each cause, no warrant was ever served.  The case remained inactive for three years until counsel for Appellant appeared on May 2, 2019.

At that time, the State amended both of its motions and the trial court held a hearing on both motions.  The State announced it was abandoning certain allegations and was proceeding on Appellant's failure to report to his community supervision officer on multiple occasions, failure to remain in Hale County, failure to report a correct address or place of employment within forty-eight hours of any change, failure to pay restitution, fines, court costs, supervision fees, and a Crime Stopper's fee, failure to report any arrest or detention, and failure to complete 400 hours of community service.

In cause number B19916-1503, Appellant entered pleas of "true" to failure to pay and failure to complete the required hours of community service and "not true" to the

---

[1] TEX. PENAL CODE ANN. § 71.02(13) (West Supp. 2020).  Because the criminal activity Appellant was alleged to have engaged in, tampering with a governmental record, was a state jail felony, the offense was "one category higher" or a third degree felony.  *Id.* at §§ 37.10(c)(1), 71.02(b).

[2] TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (West 2017).  As indicted, an offense under this section was a second degree felony.  *Id.* at § 481.115(d).

remaining allegations. In trial court cause number B19937-1504, Appellant entered a plea of "true" only to the allegation of failure to pay and "not true" to the remaining allegations. After presentation of witnesses and evidence, the trial court adjudicated Appellant guilty of the offense of engaging in organized criminal activity and sentenced him to seven years confinement and ordered restitution in the amount of $16,164.59. On the possession conviction, the trial court revoked Appellant's community supervision and imposed the original sentence of five years confinement and assessed a fine of $2,000. The two sentences were ordered to run concurrently.

By this appeal, Appellant presents five issues challenging the convictions. In his first two issues, he contends trial counsel was ineffective in failing to investigate and discuss the State's amended allegations with him thereby rendering his pleas of "true" involuntary. By his remaining three issues, he asserts an abuse of discretion by the trial court in revoking his community supervision on the basis of his failure to perform community service due to the affirmative defense of impossibility, which violated his due process rights and for his failure to pay when the State failed to prove his ability to pay. Appellant further asserts the trial court erred by ordering his incarceration without considering other, less harsh, alternatives in violation of the Fourteenth Amendment. We affirm the judgment of the trial court.

BACKGROUND

Appellant was originally placed on community supervision in Hale County in 2015, and shortly thereafter, his supervision was transferred to Fort Bend County where he moved for purposes of employment. He later developed a spinal disease that confined him to a wheelchair. Appellant now contends his medical condition rendered him unable

3

to work and that he is without the means to meet the financial obligations of his community supervision or perform any hours of community service. In support of his argument, he offered evidence that he and his family were evicted from their home and moved in with his sister in Harris County.

Appellant's original community supervision officer did not testify at the revocation hearing. The officer who did testify explained that he did not have personal knowledge of Appellant's case but, instead, relied on chronological reports and information contained in Appellant's file, which were business records of the Community Supervision and Corrections Department. He confirmed that Appellant failed to report that he had moved from Fort Bend County to Harris County. He also failed to report his change of address to the Hale County supervision office as required by the conditions of his community supervision and he did not make payments on the amounts owed under the terms and conditions of his community supervision. The supervising officer also testified that Appellant was not performing the required number of community service hours each month.

Appellant disputed the officer's testimony and claimed that he was reporting in Fort Bend County and was also reporting by mail to Hale County by having his wife mail the required forms. He further claimed that he reported his eviction and subsequent move to Harris County to live with his sister. He maintained that he regularly called his Hale County supervision officer but she never returned his calls. He testified his Fort Bend County supervision officer told him she was tired of "babysitting" him.

Appellant offered numerous excuses for not complying with the conditions of his community supervision. There were times when he was without transportation. He also

4

described his back injury which prevented him from earning sufficient income to satisfy his financial obligations or performing his hours of community service. The trial court questioned Appellant about the nature of his injury and he explained that he had surgery to implant a device in his back for stimulating his nerves which made his back pain manageable.

Appellant is a contractor by trade and after his health improved, in 2017, he was able to find steady employment performing renovations on homes damaged by Hurricane Harvey. He finally became employed at a hotel working as the main contractor and as a project manager. Appellant testified his employer was holding his position open for him in the hope that his community supervision issues would be resolved without incarceration.

Appellant's wife testified that she mailed Appellant's signed forms to the Hale County Community Supervision and Corrections Department. She also confirmed that Appellant suffered from serious back pain that not only prevented him from working, but also left the family with no income and completely dependent on family and friends for their housing and support.

A family friend testified as to Appellant's good character and his willingness to take whatever steps were necessary to satisfy his obligations to community supervision. In addition, Appellant is godfather to the friend's son and they rely on him. The friend also offered to assist Appellant in his endeavors to comply with his community supervision obligations.

At the conclusion of the hearing, the trial court found that, based on Appellant's pleas of true to some of the allegations and the evidence presented by the State as to others, the allegations contained in the motion to proceed and the motion to revoke were true. As to the charge of engaging in organized criminal activity, the trial court revoked Appellant's deferred adjudication, adjudicated him guilty, and assessed his sentence at seven years confinement. As to the charge for possession of a controlled substance, the trial court revoked his community supervision and assessed a sentence of five years confinement and a fine of $2,000. The trial court's rulings were memorialized in the judgments from which Appellant now appeals.

### STANDARD OF REVIEW

An appeal from a court's order revoking deferred adjudication and adjudicating guilt is reviewed in the same manner as an order revoking straight community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.108(b) (West 2018). When reviewing an order revoking community supervision imposed under an order of deferred adjudication, the sole question before this court is whether the trial court abused its discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated a condition of community supervision as alleged in the motion to revoke. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). In a revocation context, "a preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his [community supervision]." *Hacker*, 389 S.W.3d at 865 (citing *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006)). The trial court abuses its discretion in revoking community supervision if, as to every ground alleged, the State fails to meet its burden of

6

proof. *Cardona v. State*, 665 S.W.2d 492, 494 (Tex. Crim. App. 1984). In determining the sufficiency of the evidence to sustain a revocation, we view the evidence in the light most favorable to the trial court's ruling. *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979).

Important in this proceeding is the premise that a single violation of community supervision is sufficient to support revocation. *See Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). Additionally, a plea of true standing alone is sufficient to support a trial court's revocation order. *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. 1979).

### ISSUES ONE AND TWO—WAS TRIAL COUNSEL INEFFECTIVE?

By his first and second issues, Appellant contends trial counsel provided ineffective assistance that resulted in his plea of "true" to certain allegations being made involuntarily. We disagree.

The right to reasonably effective assistance of counsel in a criminal prosecution is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution. U.S. CONST. amend VI; TEX. CONST. art. I, § 10. To establish a claim based on ineffective assistance of counsel, an appellant must show that (1) his counsel's representation fell below the objective standard of reasonableness and (2) there is a reasonable probability that but for counsel's deficiency the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In other words, an appellant must show his trial counsel's performance was deficient and that he was prejudiced by that deficiency. *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017).

7

Additionally, a claim of ineffective assistance of counsel must be firmly demonstrated in the record. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013).

In most cases, a direct appeal is an inadequate vehicle for raising a claim of ineffective assistance because the record is generally undeveloped and cannot adequately reflect counsel's trial strategy. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). When counsel is not afforded an opportunity to explain his strategy before being denounced as ineffective, an appellate court should not find deficient performance unless counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Therefore, when the record is silent on counsel's trial strategy, we will assume that counsel had a strategy if any reasonable sound strategic motivation can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Here, Appellant complains of trial counsel's failure to investigate and discuss with him the State's amended allegations. At the hearing, after the State announced it was ready to proceed, trial counsel requested and was granted a recess to review the amended allegations because Appellant intended to plead "true" to some of those allegations. After the recess, trial counsel announced the defense was ready to proceed

8

because the amended allegations merely added numerous dates over several years in which Appellant failed to report and make payments. The trial court asked Appellant if he agreed that his counsel "had sufficient time to prepare for these proceedings," to which he answered, "[y]es." Nothing in the record on direct appeal shows that counsel was surprised by the amended allegations. They were merely more months of failing to report and cumulative sums due on fines, fees, and costs over several more years. Appellant's defense to the amended allegations was identical to his defense to the original allegations. Trial counsel's questioning of Appellant gave him the opportunity to explain the mitigating factors for his inability to comply with the conditions of his community supervision.

Furthermore, trial counsel conducted a vigorous cross-examination of the supervision officer who had not overseen Appellant's case. He also elicited favorable testimony from Appellant's wife and from Appellant's friend. The record does not demonstrate that trial counsel's performance was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392.

The trial court found that Appellant's pleas of true to specific allegations were made freely and voluntarily. Nothing in the record on direct appeal contradicts the trial court's finding. Therefore, we conclude that based on the totality of the representation, trial counsel's performance did not fall below an objective standard of reasonableness and did not render Appellant's pleas of true involuntary. Issues one and two are overruled.

ISSUES THREE, FOUR, AND FIVE—DID THE TRIAL COURT ABUSE ITS DISCRETION?

In reviewing an adjudication of guilt, just as in a revocation proceeding, the sole question before this court is whether the trial court abused its discretion. *Hacker*, 389

9

S.W.3d at 865.  Appellant asserts the trial court abused its discretion in several respects.  First, he maintains that requiring him to repay the costs of his legal defense and requiring him to perform community service were an impossibility for him.  Second, he argues that under article 42A.751(i) of the Code of Criminal Procedure,[3] the State was required to prove by a preponderance of the evidence that he had the ability to pay and it failed to meet that burden.  Finally, he asserts incarceration for failure to pay violated his Fourteenth Amendment rights.

Appellant's contentions notwithstanding, the trial court did not abuse its discretion in adjudicating him guilty and revoking his community supervision when he entered voluntary pleas of "true" to some of the allegations.  A plea of "true" to even one allegation is sufficient to support the trial court's decision especially if the plea of true is to a violation that does not involve ability to pay.  Appellant pleaded true to failure to perform community supervision hours.  *See Barrera v. State*, No. 07-18-00098-CR, 2018 Tex. App. LEXIS 7480, at *5-6 (Tex. App.—Amarillo Sept. 11, 2018, no pet.) (mem. op., not designated for publication).

Additionally, the evidence presented by the Hale County supervision officer demonstrated that Appellant failed to comply with some of the conditions of community supervision.  During his own testimony, Appellant acknowledged non-compliance with some conditions but offered excuses for failing to comply.

On the issue of the State's burden to show that Appellant had the ability to pay but failed to do so, article 42A.751(i) applies only when revocation is based *solely* on an

---

[3] Tex. Code Crim. Proc. Ann. art. 42A.751(i) (West Supp. 2020).

allegation that a defendant failed to pay costs and fees as required by the conditions of community supervision. *See Sharp v. State*, No. 07-19-00409-CR, 2020 Tex. App. LEXIS 7124, at *8 (Tex. App.—Amarillo Sept. 2, 2020, pet. ref'd) (mem. op., not designated for publication); *Adame v. State*, 07-19-00007-CR, 2019 Tex. App. LEXIS 10765, at *10 (Tex. App.—Amarillo Dec. 11, 2019, no pet.) (mem. op., not designated for publication). Here, the State alleged numerous violations of the conditions of community supervision even after abandoning several allegations at the hearing. We conclude that based on the record before us, the trial court did not abuse its discretion in adjudicating Appellant guilty of engaging in organized criminal activity and in revoking community supervision on the possession conviction. Issues three, four, and five are overruled.

CONCLUSION

The trial court's *Judgment Adjudicating Guilt* in cause number B19916-1503 and the trial court's *Judgment Revoking Community Supervision* in cause number B19937-1504 are affirmed.

Patrick A. Pirtle
Justice

Do not publish.

Quinn, C.J., concurring in the result.