

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00137-CR

———————————————————

AUBRY CLEVENGER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CR20-0776

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. Introduction

At 4 a.m. on May 2, 2020, a Weatherford police officer stopped 38-year-old Appellant Aubry Clevenger after determining that she had a warrant for her arrest out of Abilene, unconfirmed insurance, and a suspended driver's license.[1] Inside her vehicle, which had been traveling westbound, police found 110.52 grams of methamphetamine, $5,980 in cash, a digital scale with methamphetamine residue, empty baggies, some marijuana, some cell phones containing text messages about prices, quantities, and distribution locations,[2] and some night-vision goggles. Clevenger tried to get her passenger to take responsibility for the drugs, telling him, "I have kids."[3]

---

[1]The officer used a Texas Law Enforcement Telecommunications System (TLETS) search to obtain this information when he saw the vehicle at a gas station. *See Villarreal v. State*, 631 S.W.3d 198, 202 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (describing TLETS); *see also* Tex. Dep't of Pub. Safety, *Texas Law Enforcement Telecommunications System*, https://www.dps.texas.gov/section/crime-records/texas-law-enforcement-telecommunications-system (last visited Aug. 22, 2022).

[2]For example, at 8:30 p.m. on May 1, 2020, Clevenger texted a client that she was "headed to pick the mother load [sic] up" and would be back in six hours. At 3:13 a.m. and 3:18 a.m. on May 2, 2020, she texted other clients that she was leaving the DFW area.

[3]Clevenger had two young children, ages six and nine, with whom Child Protective Services was involved, as well as two older children, ages 17 and 21, who did not live with her.

Clevenger subsequently pleaded guilty to first-degree felony possession of a controlled substance with intent to deliver. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), .112(d). In her punishment testimony, she stated that she had started using drugs at 17 and was both a dealer and an addict. The trial court admitted her criminal history into evidence.[4]

After deliberating for less than two hours, a jury assessed Clevenger's punishment at 99 years' confinement and a $10,000 fine.[5] *See* Tex. Penal Code Ann. § 12.32 (stating that the first-degree-felony punishment range is for life or any term not more than 99 years or less than 5 years, as well as up to a $10,000 fine). The trial court entered judgment accordingly, and in two points, Clevenger complains that her due-process rights were violated when the trial court failed to timely admonish her about the punishment range and when it failed to declare a mistrial for a biased juror. Because the record does not support either point, we affirm.

---

[4]Clevenger's first offense was in 2005, and she received community supervision for possessing less than a gram of methamphetamine, a state-jail felony. Her community supervision for that offense was revoked upon her 2008 conviction for another possession offense. Between 2005 and 2008, she was also convicted of misdemeanor criminal trespass of a habitation. She pleaded guilty or nolo contendere to misdemeanor thefts in 2009, 2013, and 2016, and she pleaded no contest to a misdemeanor DWI in 2011.

[5]During voir dire, venire panel members commented on methamphetamine and how addiction to it "[r]uins families," destroys the lives and careers of those who use it, and leads to homelessness and violent crimes. They also opined that addiction to methamphetamine stemmed from personal choice.

3

## II. Discussion

### A. Point 1

In her first point, Clevenger complains that the trial court failed to timely admonish her about the offense's punishment range, but she acknowledges in a footnote to her appellate brief that she signed written plea admonishments that included the full range of punishment.[6] And the record reflects that the trial court did not accept her guilty plea until it had apprised her orally of the full punishment range of "up to life or not more than 99 years or less than five years, in addition to a $10,000 fine" and confirmed that she understood.

"So long as the record *otherwise* affirmatively discloses that the defendant's guilty plea was adequately informed, due process is satisfied." *Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013); *see Ex parte Westerman*, 592 S.W.3d 441, 443 (Tex. Crim. App. 2019) (Walker, J. concurring) (stating that a guilty plea is involuntary if the defendant is in *total* ignorance of the punishment range); *see also Martinez v. State*,

---

[6]The first page of the written plea admonishments states: "I acknowledge understanding the content of this document including the range of punishment items indicated with the notation (XXX) applicable to me." The next sentence states, "I am charged with the felony offense of Possession of a Controlled Substance, with intent to deliver, namely, Methamphetamine, 4-200 grams, which has a punishment range (as enhanced, if applicable,) as follows:" and then "XXX" is marked next to "**First Degree:** Punishment Range – Confinement in the Texas Department of Criminal Justice – Institutional Division for life or for any term of not more than 99 years or less than 5 years. In addition to imprisonment, you may be punished by a fine not to exceed $10,000." On the third page, above Clevenger's signature, she agreed that she had read "each and every paragraph above" and fully understood them, was aware of the consequences of her plea, and had no questions about the admonishments.

981 S.W.2d 195, 197 (Tex. Crim. App. 1998) ("A finding that a defendant was duly admonished creates a prima facie showing that a guilty plea was entered knowingly and voluntarily."). Because the record reflects that Clevenger was aware of the punishment range both when she made her guilty plea and before the trial court accepted it, we overrule her first point.

## B. Point 2

In her second point, Clevenger argues that her car was towed by a company for which a juror (T.M.) worked and that she was accordingly entitled to a mistrial sua sponte because of T.M.'s potential bias and his having withheld material information during voir dire.

When a juror withholds material information during voir dire that the defense, using due diligence, could not uncover, the parties are denied the opportunity to exercise their challenges, which hinders their selection of an impartial jury. *State v. Gutierrez*, 541 S.W.3d 91, 99–100 (Tex. Crim. App. 2017). The withheld information need not prove that the juror is actually biased but rather must tend to show bias—a fact issue. *Id.* at 100. If the trial court finds that the juror is not actually biased,[7] and that finding is supported by the record, then the defendant has not been harmed by a violation of her constitutional right to an impartial jury. *Id.* We review a trial court's

---

[7]Bias exists when a venireperson's beliefs or opinions would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. *Garza v. State*, 18 S.W.3d 813, 819 n.3 (Tex. App.—Fort Worth 2000, pet. ref'd).

determination of historical fact (i.e., whether the juror was actually biased) for an abuse of discretion and give almost total deference to the trial court's determination if it is supported by the record.  *Id.*[8]

To determine "materiality," we evaluate whether the withheld information would likely reveal that the juror harbored a bias or prejudice to such a degree that he or she should have been excused from jury service.  *Sypert v. State*, 196 S.W.3d 896, 900 (Tex. App.—Texarkana 2006, pet. ref'd); *see Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. [Panel Op.] 1978).[9]  As to "withholding," counsel must be diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential prejudice or bias.  *Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999).  Unless defense counsel asks questions calculated to bring out

---

[8]In *Gutierrez*, when a juror recognized the first witness as someone he had known in high school in 1994, the trial court allowed the parties to question him.  541 S.W.3d at 101–03.  The juror vacillated about whether knowing the witness would affect his ability to be impartial.  *Id.* at 103.  In analyzing the defendant's ineffective-assistance complaint, the court concluded that the defendant could not prove that the trial court would have erred if it had denied a mistrial request because the record did not show that the only reasonable interpretation of the evidence was that the juror was biased:  when a juror vacillates, a reviewing court's deference to the trial court's finding is at its apex based on the evaluation of witness credibility and demeanor.  *Id.*

[9]In *Salazar*, the court concluded that the withheld information was material when the charged offense against the Hispanic defendant was indecency with a child; the juror's withheld information was that he had been an eyewitness to his daughter's sexual assault by a Hispanic male and had testified as a witness in the ensuing criminal case; and the juror's disclosure on his juror information sheet stated—and during his voir dire examination, he said—that, contrary to the truth, he had never been a complainant or a witness in a criminal case.  562 S.W.2d at 481–83.

information that might be said to indicate a juror's inability to be impartial and truthful, the purportedly material information that the juror fails to disclose is not really "withheld" so as to constitute misconduct that would warrant a reversal. *Id.* Regarding written jury questionnaires, "counsel should be sure to ask follow-up oral questions concerning any information on the form that counsel deems material" and should "never assume that the respondents will understand each question as it was intended by counsel to be understood." *Id.*

Here, after the jury was sworn, but before trial began, the trial court was informed that T.M. worked for a company that "was somehow affiliated with the towing of Ms. Clevenger's car." On his jury questionnaire, T.M. had stated that he had worked at the towing company for approximately two months, which would have been a year after the May 2, 2020 offense date, but—after he was selected as a juror and during the questioning by the parties and trial court—T.M. stated that he thought he had written two years on the questionnaire.

During the questioning, the parties and trial court learned that T.M.'s father had owned the towing company for over 20 years and that T.M. had been working there for two years as a manager but had worked there "around the yard and stuff" since he was eight years old. Defense counsel informed T.M., "[T]he reason we're asking you this is that y'all's family towed the car in this case." T.M. stated, "I wouldn't know anything unless I towed the car because . . . [w]e're not allowed to say anything." He stated that he had no recollection of anyone's talking about Clevenger

7

or her case and did not know anything about her or the case. The trial court asked if his father's wrecker service company had towed Clevenger's vehicle, "that would be news to you?" T.M. replied, "Yeah. So . . . the way that goes, whatever driver picked it up, they get a form from the Weatherford PD. And, then, all we do is we turn it in to an office, and they put it in a document, and nobody else gets to see it."

When defense counsel asked him whether the police ever informed a tow truck driver about why a person was arrested, T.M. said that only to the extent that if "you have to pull the panel off to put [the vehicle] in neutral . . . if you do pop the panel and you find something, you let them know." When defense counsel expressed his concern that evidence in the case might jog T.M.'s memory, T.M. said, "I don't know her. I don't know what she drove. I don't know any of that. . . . I can tell you what I've picked up, and I haven't picked up a drug car in I don't know how long . . . because I'm barely in a wrecker anymore."

The trial court asked T.M. if he could follow the law, listen to the facts, and follow the jury instructions, to which T.M. replied, "Yes, sir." When the trial court told T.M., "So, you're not going to discuss this with anybody that's back there . . . [n]ot at the house, not anywhere," T.M. said, "No, sir," and he agreed that he would wait until released from the jury instructions.

The State marked the towing contract as an exhibit for the record. The towing contract reflected that T.M.'s father's company had impounded the vehicle at the direction of the police after Clevenger and her passenger were arrested for

"Mar/Del/Ps1 4-200," but it did not identify the employee who impounded the vehicle. The trial court asked defense counsel whether, based on T.M.'s responses to his questions, the defense "[was] good to proceed," and Clevenger's counsel replied, "Yes, Your Honor." The prosecutor agreed and informed the trial court that the State would not mention who towed the vehicle.

Clevenger argues that the trial court erred by failing to sua sponte declare a mistrial, complaining that T.M. withheld material information regarding potential bias during voir dire. However, the record reflects that the complained-of information was neither material[10] nor withheld[11] and that, during post voir dire questioning, the trial court evaluated T.M.'s credibility and demeanor regarding potential or actual bias and implicitly determined that a mistrial was unwarranted by continuing with the trial. Accordingly, we overrule Clevenger's second point.

---

[10]The information was not material because by the time T.M. was selected for the punishment-phase jury, Clevenger had already pleaded guilty to possession with intent to deliver a Penalty Group 1 substance of 4 to 200 grams, which—if T.M. had known or recalled anything about her case—was no more than anyone else on the jury also knew at that point.

[11]The information was not withheld because during voir dire no one asked the venire panel about the wrecking company or followed up on T.M.'s jury questionnaire response about his employment with it. *See Badger v. State*, No. 02-18-00475-CR, 2019 WL 5089761, at *8–9 (Tex. App.—Fort Worth Oct. 10, 2019, pet. ref'd) (mem. op., not designated for publication) (concluding that no material information was withheld when the jury questionnaire did not specifically ask whether the juror knew or was related to an employee in the district attorney's office and neither side during voir dire specifically asked the panel if they knew anyone in the district attorney's office).

### III. Conclusion

Having overruled both of Clevenger's points, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 25, 2022