# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00155-CR

**Cuong Tran, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. D-1-DC-15-900145, HONORABLE MIKE DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Cuong Tran guilty of assault against a family member by strangulation, a third-degree felony, *see* Tex. Penal Code § 22.01(b)(2)(B), and assessed punishment at six years' imprisonment. In two points of error, Tran contends that the trial court erred in admitting evidence of an extraneous offense and that he received ineffective assistance of counsel. We will affirm the trial court's judgment of conviction.

## BACKGROUND

At trial, Tran's neighbor testified that Tran's wife, Loan Dihn (who is often referred to in the record by her nickname, "Jennifer," which we will use throughout this opinion) came to her home. According to the neighbor, Jennifer was "extremely upset and crying, sobbing," and "had her hands on her throat." Jennifer "said she wasn't safe at home" and "said that she had to jump the fence to get out of the house to come for me and that [Tran] had choked her . . . to the point that she

almost passed out and had urinated on herself." Jennifer further told the neighbor, "I'm tired of this I can't live like this any more I want a divorce." The neighbor called 911. While waiting for help to arrive, the neighbor noticed "red marks" on Jennifer's neck.

Officer John Yurcina of the Pflugerville Police Department testified at trial that he responded to the neighbor's 911 call. According to Officer Yurcina, Jennifer told him "that she had been assaulted at her residence." Jennifer was "very visibly distraught and upset" and "had red marks on her neck which later in the interview were consistent with being strangled, specifically with a hand." Jennifer told the officer that Tran was upset and angry with her and then assaulted her:

> [Officer Yurcina:] She stated to me that as the argument escalated she became fearful. She mentioned that this was not the first time this situation that occurred before, and she attempted to leave the residence to go to the neighbor's house as she usually does. She said that Tran grabbed her, pushed her down onto the sofa in the living room and put his hand on her throat applying pressure preventing her from breathing, and also making her feel tingly as if she were about to pass out.

Officer Yurcina further testified that "the only way that [Jennifer] was able to escape that situation was by kicking [Tran] in the stomach breaking free of his grip, and then escaping out of a back door, jumping a fence and running to the neighbor's house."

The State also called Officer Keith Ritchie at trial, who testified that he responded to the scene along with Officer Yurcina. Officer Ritchie testified about what the neighbor told him had happened. He further testified that Jennifer told him that she wanted to divorce her husband. According to Officer Ritchie, Jennifer explained to him that Tran "shoved her down on the couch he grabbed her around the neck, each side of the neck and began squeezing." In addition, Officer Ritchie testified, "She said initially she was trying to fight, scratching, trying to get up. She said that

2

she started to feel tingly and I believe she went unconscious." Jennifer also told him that she was in fear for her life.

Later in the trial, the State indicated that it planned to call a witness who would testify concerning an incident of domestic violence between Tran and Jennifer that allegedly occurred about 23 years earlier in 1994. Following a hearing outside the jury's presence, the trial court decided to allow the testimony over Tran's objection. The witness, Constable Richard Sanders, testified that he was working at a hospital in 1994 when Tran and Jennifer walked in. According to Constable Sanders, Tran was assisting Jennifer into the emergency room, and Jennifer "was crying and holding the right side of her face." Constable Sanders further testified, "She saw me and stated, he hit me." Constable Sanders testified, "I had the Asian female fill out an assault victim statement and I arrested the male for assault with injury family violence." Constable Sanders testified that he transported Tran to jail but did not know what happened with the case after that.

Jennifer did not testify during the guilt-innocence phase of trial despite the fact that she had received a subpoena instructing her to appear. After hearing all the evidence, the jury found Tran guilty. At the punishment phase of trial, several witnesses testified, including Jennifer, who asked the jury to give her husband probation. The jury assessed punishment, the trial court rendered its judgment of conviction, and this appeal followed.

**DISCUSSION**

**Extraneous Offense**

In his first point of error, Tran contends that the trial court "erred in admitting into evidence a twenty-three year old extraneous offense under Art. 38.371 of the Texas Code of Criminal Procedure."

We review the trial court's decision to admit evidence for an abuse of discretion. *See Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016); *Hennington v. State*, No. 03-16-00332-CR, 2018 WL 895037, at *3 (Tex. App.—Austin Feb. 15, 2018, pet. ref'd) (mem. op., not designated for publication). A trial court abuses its discretion only if "its decision lies outside the zone of reasonable disagreement," and we "may not substitute our own decision for that of the trial court." *See Gonzalez*, 544 S.W.3d at 370.

At trial, the State argued that the court should allow an officer to testify about Tran's arrest for family violence made in 1994. The State contended that the testimony was admissible under Article 38.371 of the Texas Code of Criminal Procedure and Rule 404(b) of the Texas Rules of Evidence. On appeal, the State concedes that "any reliance on Art. 38.371 for the admissibility of evidence was error" because Article 38.371 only applies to criminal proceedings that commence after September 1, 2015, while Tran committed the offense at issue in this appeal in 2013. *See* Act of May 31, 2015, 84th Leg., R.S., ch. 1086, § 4(a), 2015 Tex. Gen. Laws 3732, 3733 ("The change in law made by this Act in adding Article 38.371, Code of Criminal Procedure, applies to the admissibility of evidence in a criminal proceeding that commences on or after the effective date of this Act."); *id.* § 5 ("This Act takes effect September 1, 2015."). The State nevertheless argues that the trial court properly admitted the evidence under Rule 404(b).

We will uphold the trial court's evidentiary ruling if it is correct under any applicable legal theory, even if the trial court gave the wrong reason for its ruling. *See Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016); *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Russell v. State*, No. 05-17-00419-CR, 2018 WL 2473818, at *8 (Tex. App.—Dallas June 4, 2018, no pet. h.) (mem. op., not designated for publication); *Hopkins v. State*, No. 03-16-00746-CR, 2018 WL 1660831, at *12 (Tex. App.—Austin Apr. 6, 2018, no pet. h.) (mem. op., not designated for publication); *Davis v. State*, 214 S.W.3d 101, 103 (Tex. App.—Beaumont 2006, pet. ref'd). Therefore, we will uphold the trial court's decision to admit testimony about the 1994 arrest if the testimony was admissible under Rule 404(b).

Rule 404(b) provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). However, the rule also provides, "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). We conclude that the trial court would not have abused its discretion by admitting testimony about the 1994 arrest under Rule 404(b) because the testimony was relevant to the relationship between Tran and his wife. *See Garcia v. State*, 201 S.W.3d 695, 703 (Tex. Crim. App. 2006) ("[I]n cases in which the prior relationship between the victim and the accused is a material issue, illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible."). Multiple witnesses testified that Jennifer made statements to them suggesting that the assault at issue in this case was not the first time that Tran had assaulted her. For example, the

neighbor testified that Jennifer told her, "I'm tired of this I can't live like this any more I want a divorce." And Officer Yurcina testified that Jennifer "mentioned that this was not the first time this situation that occurred before." The testimony of the 1994 arrest provided evidence that Tran had assaulted his wife more than 20 years earlier and suggests that the assault for which Tran was on trial was not an accident or mistake.

In addition, because Jennifer apparently decided not to appear during the guilt-innocence phase of trial despite having received a subpoena instructing her to do so, the State reasonably felt that it needed to explain her absence. For example, the State called a counselor with the Austin Police Department victim services unit, who testified about common behaviors of victims of domestic violence and why they may often remain in an abusive relationship and decide not to report abuse or press charges against the abuser. The testimony about the 1994 arrest could suggest to the jury that Jennifer failed to appear for trial not because Tran did not assault her, but because Tran had placed her in fear for her safety or otherwise manipulated her. *See Stulce v. State*, No. 05-14-01226-CR, 2016 WL 4218594, at *3 (Tex. App.—Dallas Aug. 9, 2016, no pet.) (mem. op., not designated for publication) ("[E]vidence of an extraneous offense may be admissible for other non-character conformity purposes such as showing the reason a sexual assault victim failed to report the assault promptly or rebutting a defensive theory.") (citing *Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. [Panel Op.] 1983)).

Finally, the testimony about the 1994 arrest was also admissible to rebut a defense theory. *See Work v. State*, No. 03-18-00244-CR, 2018 WL 2347013, at *8 (Tex. App.—Austin May 24, 2018, no pet. h.) (mem. op., not designated for publication) ("[C]ourts have explained that

'extraneous-offense evidence, under Rule 404(b), is admissible to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination.'") (quoting *Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). As discussed in more detail below, the defense's theory at trial was that Tran assaulted Jennifer in self-defense or mutual combat. The testimony of the 1994 arrest, according to which an uninjured Tran had struck his wife such that she needed to visit the emergency room, could suggest to the jury that Tran was the aggressor in the case being tried.

Tran argues that the testimony of the arrest was inadmissible because it was too remote—that is, the alleged arrest happened over 20 years before trial. However, Rule 404(b) contains no provision limiting its applicability to evidence over a certain age. *Cf.* Tex. R. Evid. 609(b) (providing certain limitations on admissibility of prior conviction "if more than 10 years have passed since the witness's conviction or release from confinement for it"). Moreover, as our sister court has explained, the probative value of a prior act "is not reduced to zero by the passage of time and, unlike rule 403, rule 404(b) does not involve a weighing of probative value." *Stulce*, 2016 WL 4218594, at *5 (citing *Newton v. State*, 301 S.W.3d 315, 318 (Tex. App.—Waco 2009, pet. ref'd)).[1] That is especially true when, as here, the point of the evidence is to show a long-standing relationship between the defendant and the alleged victim. As discussed above, testimony that Tran

---

[1] We also note that the cases on remoteness on which Tran relies were decided before the adoption of the Texas Rules of Evidence, which favor the inclusion of evidence. *See Stulce v. State*, No. 05-14-01226-CR, 2016 WL 4218594, at *5 (Tex. App.—Dallas Aug. 9, 2016, no pet.) (mem. op., not designated for publication) ("As the State points out, appellant's cited authorities predate the adoption of the rules of evidence. The shift from common law authority to the rules of evidence involved a shift in sentiment from favoring exclusion of evidence to favoring inclusion of evidence.").

assaulted his wife more than 20 years before trial is relevant to the nature of their relationship, to the question of whether Tran was the sole aggressor during the assault, and to the question of why Jennifer did not appear during the guilt-innocence phase of trial. Therefore, we cannot conclude that the trial court abused its discretion in admitting the testimony despite the length of time that had passed since the alleged arrest. *See Perez v. State*, No. 12-14-00116-CR, 2015 WL 3451556, at \*6 (Tex. App.—Tyler May 29, 2015, pet. ref'd) (mem. op., not designated for publication) ("[T]here is no per se rule as to when an extraneous offense is too remote in time to be introduced in evidence . . . . The period of time separating the extraneous offense from the primary offense is a factor to be considered, along with all other relevant factors."); *Corley v. State*, 987 S.W.2d 615, 620 (Tex. App.—Austin 1999, no pet.) ("We note that there is no *per se* rule as to when an extraneous offense is too remote in time to be introduced in evidence.").

Because we conclude that the testimony about the 1994 arrest was relevant evidence and admissible under Rule 404(b), we cannot conclude that its admission was an abuse of discretion, and we overrule Tran's first point of error.

**Ineffective Assistance of Counsel**

In his second point of error, Tran contends that he received ineffective assistance of counsel. We apply the two-prong *Strickland v. Washington* standard to Tran's claim. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail under *Strickland*, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *See id.*; *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017). In addition, as the Texas Court of Criminal Appeals has explained,

8

> Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. This is true with regard to the question of deficient performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight—where counsel's reasons for failing to do something do not appear in the record. We have said that trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.

*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (cleaned up).

Here, Tran complains that his trial counsel did not object on hearsay and Confrontation Clause grounds to testimony from the State's witnesses about their conversations with Jennifer. Tran argues that his counsel's failure to object to this evidence "was especially crucial because of the complainant's absence from the guilt-innocence portion of the trial and the fact that there were no eyewitnesses to the alleged assault." However, it appears from the record before us that Tran's counsel did have a consistent trial strategy: attempting to convince the jury that although Tran assaulted his wife, he did so in self-defense or mutual combat. The record is replete with instances in which counsel argued self-defense or mutual combat or raised these issues through cross-examination. For example, in his opening argument, Tran's counsel argued as follows:

> This case is a three year old case and you'll hear from the facts of this particular case, there was an argument between the two people. They've been married 20 plus years, people have arguments. I think the police will also testify that my client had scratches on his neck, so it was a problem between the two individuals and the police were called.

Counsel did not suggest that no physical encounter took place—he instead argued that the encounter was not an unjustified criminal assault but rather merely a mutual marital "problem."

9

To take another example, the following exchange occurred on cross-examination between Tran's counsel and Officer Ritchie:

[Tran's counsel:] And you also see on [Tran] there he has scratches on him, so looks like it may have been mutual combat, is that possible?

[Officer Ritchie:] That's always an option.

[Tran's counsel:] Okay. If a person was getting attacked, strangulation would stop another attack wouldn't it?

[Officer Ritchie:] Could.

[Tran's counsel:] It could be used as a self-defense tactic?

[Officer Ritchie:] It could be used lethality [sic], yeah.

[Tran's counsel:] That gets somebody off of you real quick won't it?

[Officer Ritchie:] Uh-huh.

Again, this exchange reveals defense counsel's trial strategy: convincing the jury that Tran acted in self-defense.

This trial strategy becomes even clearer when one realizes that Tran's counsel obtained a self-defense jury instruction over the State's objection. In order to obtain a self-defense jury instruction, a defendant must effectively admit to committing each element of the offense but then assert that the conduct was justified. *See Juarez v. State*, 308 S.W.3d 398, 401 (Tex. Crim. App. 2010) (discussing "the long-standing legal doctrine of confession and avoidance"); *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) ("[A] defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense including the

10

culpable mental state, but interposes the justification to excuse the otherwise criminal conduct."); *Estrella v. State*, Nos. 01-16-00938-CR & 01-17-00162-CR, 2018 WL 1056407, at *11 (Tex. App.—Houston [1st Dist.] Feb. 27, 2018, no pet.) ("The doctrine requires a defendant to first admit that he engaged in the proscribed conduct by admitting all elements of the underlying offense, then claim that his commission of the offense is justified because of other facts."); *Stanley v. State*, No. 02-16-00176-CR, 2018 WL 359903, at *9 (Tex. App.—Fort Worth Jan. 11, 2018, no pet.) (mem. op., not designated for publication) ("[T]o be entitled to a self-defense instruction, the defendant must admit every element of the offense, including the culpable mental state."); *Penning v. State*, No. 03-14-00579-CR, 2016 WL 4628052, at *3 (Tex. App.—Austin Aug. 31, 2016, no pet.) (mem. op., not designated for publication) ("Justification defenses, including necessity and self-defense, are based on the confession- and-avoidance doctrine, which requires a defendant to admit the conduct—both the act or omission and the requisite culpable mental state—of the charged offense.").

Because Tran's apparent strategy was to pursue, and ultimately obtain, a self-defense instruction, which required Tran to admit to the elements of the offense, it would have been inconsistent with this strategy for Tran to object to the evidence of the assault about which Tran complains on appeal. Moreover, in the absence of a more developed record, we cannot conclude that the self-defense strategy that Tran's counsel pursued was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392 (cleaned up). Tran's counsel consistently pursued a reasonable trial strategy; therefore, we cannot conclude that counsel rendered deficient performance or that Tran received ineffective assistance. Accordingly, we overrule Tran's second point of error.

11

## CONCLUSION

Having overruled Tran's points of error, we affirm the trial court's judgment of conviction.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   June 26, 2018

Do Not Publish