

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00222-CR
No. 07-16-00223-CR
_____

TRAFTON RODGERS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the140th District Court
Lubbock County, Texas
Trial Court No. 2016-409,230 (Counts I & II)
Honorable Jim Bob Darnell, Presiding

December 7, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Following pleas of not guilty to two counts of aggravated assault by threat with a deadly weapon, Appellant, Trafton Rodgers, was convicted by a jury of both counts.[1]  The

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (West 2011).  An offense under this section is a second degree felony.

jury set punishment at ten years confinement but recommended that the sentence be suspended. On the jury's recommendation, the trial court sentenced Appellant to ten years confinement, suspended in favor of community supervision for a term of ten years. Appellant presents two issues challenging his convictions. First, he contends (1) the evidence was insufficient to prove he committed aggravated assault with a deadly weapon because he acted in self-defense. Second, he asserts his trial counsel was ineffective for failing to (1) effectively research and prepare for trial, (2) call him as a witness, and (3) present evidence during the punishment phase of trial. We affirm.

BACKGROUND

Appellant has a tumultuous history with Joyce Lippold and her daughter Shanice Wheeler. He and Lippold met online in October 2007 and immediately began an intimate relationship. At that time, Lippold was married and her husband was deployed. Wheeler was only fourteen years old when she overheard Appellant and Lippold engaging in sex and became upset and volatile. Wheeler called her older brother to come over and help her deal with the situation. Together, they expressed dissatisfaction to their mother about the relationship with Appellant and a physical confrontation ensued among them and Appellant.[2] Wheeler also got physical with her mother and blamed Appellant for destroying her family.

During her testimony, Lippold admitted being passionate about Appellant. Some years after they met, in 2010, she moved three duplexes down from Appellant to be

---

[2] Wheeler was arrested for aggravated assault against Appellant and was placed on deferred adjudication community supervision.

geographically closer to him.  She testified the relationship was not as it had been in the beginning because he had begun abusing her, although she consistently lied to medical personnel about how she sustained her injuries.  She claimed she did not implicate Appellant to protect him and out of fear he would do more harm.

Even though Lippold testified she feared Appellant from all the injuries he had inflicted in the past, in 2012, she moved into the same duplex where he had lived for thirteen years.[3]  She acknowledged that Appellant had advised her not to move next door to him but claimed she made the move for financial reasons.  She was confident the move would not be problematic because she and Appellant were no longer romantically involved.  Eventually, her daughter moved in with her.

Over the course of the relationship, there were other physical altercations involving Appellant, Lippold, and Wheeler.  Eventually, Appellant sought a protective order that prohibited any contact between himself and Lippold.  Nevertheless, she violated the order several times.

At approximately 3:00 a.m. on April 9, 2013, Appellant arrived home and when he activated his car alarm, the noise woke up Lippold.  She was unable to fall asleep and instead went out to buy breakfast for herself and Wheeler.  When she returned, Appellant called her on her cell phone.  When she did not answer, he sent her a text asking if they could meet to exchange some items each had borrowed from the other.  The exchange took place without incident.

---

[3] Her residence was Unit A of the duplex and Appellant lived in Unit B of the same duplex.

Appellant again contacted her about an abdominal work-out chair she had borrowed. Lippold agreed to return the chair and placed it in her garage with the door open just enough for him to reach in and take it. Afterward, she closed the garage door. Appellant claimed that Lippold had broken the chair and tried to call her. When his calls went unanswered, he knocked on her front door. He and Lippold argued through the closed door about whether the chair was broken. As the argument escalated, Wheeler approached the front door and without opening it, shouted expletives to Appellant to leave her mother alone. She threatened to kill Appellant or have others kill him for her. Fearing that the argument would worsen, Wheeler called 911.

Given his history with Wheeler and her threat to have him killed, Appellant retrieved a shotgun from the trunk of his car and returned to Lippold's residence. He broke down the door and when he entered, Wheeler was on her phone. Although she was speaking with a 911 operator, Appellant assumed she was soliciting someone to come kill him. When he entered the residence, Lippold was on the floor in pain from a previous injury. Appellant followed Wheeler to her bedroom. He shoved her into a wall and told her in colorful language not to threaten him.

A recording of a 911 call confirms that Appellant was at Lippold's door when Wheeler was on the phone with the 911 operator. During the call, Appellant kicked in the door and entered with a shotgun. He yelled at Wheeler not to threaten him, after which she apologized for doing so. Appellant yelled, "I swear to God I will kill you and you," and then asked Wheeler and Lippold to leave him alone. He also yelled at her to call the police.

4

According to Lippold's testimony, as Appellant was leaving her residence, he placed the shotgun against her neck and threatened her life. He then returned to his side of the duplex where he also called 911. He told the operator to send police to his residence because his ex-girlfriend's daughter had threatened to kill him. He explained that Lippold had been stalking him and that he was tired of living in fear of Wheeler, who had threatened him with a knife in the past.

During Appellant's conversation with the 911 operator, the call was disconnected and the operator called back to get more information. Appellant admitted to the operator that he had a gun and that he had kicked in Lippold's door to tell Wheeler to stop threatening him. The 911 operator instructed Appellant to leave the gun in his house and open his front door to meet the officers responding to the calls.

When police officers arrived, all parties were handcuffed while both residences were searched. No weapons were found in Lippold's residence but a shotgun was found in Appellant's residence. Officers observed a small abrasion on Wheeler's shoulder and Lippold had marks on her neck. After sorting out the situation, Appellant was arrested but was later released on bond.

Appellant was indicted for numerous offenses but was only tried for two counts of aggravated assault—one against Lippold and one against Wheeler. His case was tried on a theory of self-defense. After being properly admonished, Appellant testified on his behalf and offered his version of past encounters with Lippold and Wheeler. The jury was charged on use of force and use of deadly force. The jury rejected Appellant's self-defense theory and convicted him of both counts of aggravated assault.

APPLICABLE LAW

A person commits aggravated assault if he commits assault as defined under section 22.01 of the Penal Code and uses or exhibits a deadly weapon during the commission of the offense.[4] TEX. PENAL CODE ANN. § 22.02 (a)(2) (West 2011). Under a theory of self-defense, a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. § 9.31(a). The use of force against another is not justified in response to verbal provocation. § 9.31 (b)(1). The use of deadly force is justified if the person is justified in using force under section 9.31(a) and he reasonably believes deadly force is immediately necessary to protect himself against another's use or attempted use of deadly force. § 9.32(a)(2)(A).

ISSUE ONE—SUFFICIENCY OF THE EVIDENCE

Appellant contends the State failed to prove beyond a reasonable doubt that he committed aggravated assault with a deadly weapon. We disagree.

A defendant has the initial burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once evidence is produced, the State then disproves the self-defense theory by proving that the defendant committed the charged offense beyond a reasonable doubt. *Saxton v. State,* 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) (en banc). A jury's guilty verdict is

---

[4] As relevant here, assault is committed if a person intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens another with imminent bodily injury. § 22.01(a).

an implicit rejection of a defendant's self-defense claim. *Jenkins v. State*, 740 S.W.2d 435, 438 (Tex. Crim. App. 1983).

In reviewing the rejection of a self-defense claim, we do not look at whether the State presented evidence to support the jury's rejection of that theory; rather, we review all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Mora v. State*, No. 07-15-00279-CR, 2017 Tex. App. LEXIS 6830, at *4 (Tex. App.— Amarillo July 20, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Saxton*, 804 S.W.2d at 913). *See also Musacchio v. United States*, __ U.S. __, 136 S. Ct. 709, 715, (2016); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and the reviewing court must not usurp its role by substituting its judgment for that of the jury. *Id.* (citing *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012)). The duty of the reviewing court is simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Id.* When the reviewing court is faced with a record supporting contradicting conclusions, the court must presume the jury resolved any such conflicts in favor of the verdict, even when not explicitly stated in the record. *Id.* "Under this standard, evidence may be legally insufficient when the record contains no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Id.* (quoting *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013)).

ANALYSIS

Notwithstanding the volatile history among Appellant, Lippold, and Wheeler, he was required to show that his use of force was immediately necessary and reasonable to prevail on a theory of self-defense.[5]  Conduct that is "immediately necessary" to avoid harm is conduct that is needed "right now," "at that moment—'when a split second decision is required.'"  *Henley v. State*, 493 S.W.3d 77, 89-90 (Tex. Crim. App. 2016).

The evidence established that on April 9, 2013, Wheeler threatened to kill Appellant or call others to come and kill him.  There was contradicting evidence on whether Wheeler's threats were conditioned on Appellant abusing Lippold in the future.  A conditional threat would not have required immediate use of force.  Also, Wheeler's verbal provocation alone at that time did not justify Appellant's use of force.  No weapons of any kind were found at Lippold's residence on the night of the incident.

The jury was free to resolve the conflict on whether Wheeler's threats against Appellant were immediate or intended as a future threat of harm if Appellant harmed Lippold again.  The jury resolved the conflict against Appellant.

The evidence showed that Appellant had a substantial stature—he was a former Olympic athlete.  Lippold and Wheeler were described as much smaller in stature making Appellant's use of a shotgun and physical force to prevent immediate harm to himself less plausible.  Additionally, Appellant's conduct in threatening Lippold with his shotgun while

---

[5] We note that Appellant did not specifically challenge the sufficiency of the evidence to support the elements of aggravated assault.

she was in pain and on the floor was not immediately necessary to protect himself against harm from her. Wheeler, not Lippold, had threatened to kill him.

Being faced with a record of conflicting testimony, we must presume the jury resolved any such conflics in favor of the verdict and against Appellant on his self-defense claim. Issue one is overruled.

ISSUE TWO—INEFFECTIVE ASSISTANCE OF COUNSEL

STANDARD OF REVIEW

The right to reasonably effective assistance of counsel in a criminal prosecution is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution. U.S. CONST. amend VI; TEX. CONST. art. 1, § 10. To establish a claim based on ineffective assistance, an appellant must show that (1) his counsel's representation fell below the objective standard of reasonableness and (2) there is a reasonable probability that but for counsel's deficiency the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In other words, an appellant must show his trial counsel's performance was deficient and that he was prejudiced by the deficiency. *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017).

A claim of ineffective assistance of counsel must be firmly demonstrated in the record. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex.

9

Crim. App. 2007).  We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013).

In most cases, a direct appeal is an inadequate vehicle for raising a claim of ineffective assistance because the record is generally undeveloped and cannot adequately reflect counsel's trial strategy.  *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).  When counsel is not afforded an opportunity to explain his strategy before being denounced as ineffective, an appellate court should not find deficient performance unless counsel's conduct was "so outrageous that no competent attorney would have engaged in it."  *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  When the record is silent on counsel's trial strategy, we will assume that counsel had a strategy if any reasonable sound strategic motivation can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

ANALYSIS

Appellant alleges three instances in which his counsel's representation was inadequate.  First, he maintains counsel failed to effectively research and prepare for trial. Second, he complains that counsel failed to call any witnesses to testify on his behalf. Finally, he criticizes counsel for not presenting evidence during the punishment phase of trial.

In the underlying case, Appellant did not file a motion for new trial to develop his complaints.  Consequently, the record is silent on any possible trial strategy by counsel. For Appellant to prevail on his ineffective assistance claim on direct appeal, the record

must demonstrate that trial counsel's representation was "so outrageous that no competent attorney would have engaged in it."

Regarding Appellant's complaints that trial counsel failed to call other defense witnesses or present punishment evidence, he has not shown that those witnesses would have been available to testify or that their testimony would have been of some benefit to his defense. *See Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). *See also Sauseda v. State*, No. 07-17-00100-CR, 2018 Tex. App. LEXIS 7811, at *9 (Tex. App.—Amarillo Sept. 25, 2018, no pet.) (mem. op., not designated for publication). Without such a showing, we cannot find counsel's failure to call other witnesses or present punishment evidence as deficient representation.

Viewing the totality of counsel's performance, we cannot conclude without a record of his trial strategy that his representation was inadequate. Trial counsel vigorously cross-examined witnesses, especially Lippold and Wheeler. He aggressively cross-examined Wheeler on her past violent escapades and her criminal history. He presented numerous objections during trial. His representation was not so outrageous as to be declared ineffective without giving him an opportunity to explain his strategy in defending Appellant's case. Issue two is overruled.

### REFORMATION OF JUDGMENT

A review of the clerk's records revealed several clerical errors. In the summary portion of both judgments under Plea to Offense, "guilty" is reflected as Appellant's pleas. However, a review of the reporter's record reflects that Appellant entered pleas of "not guilty" to both counts of aggravated assault with a deadly weapon. Additionally, both

11

judgments reflect that punishment was assessed by the trial court when, in fact, the jury assessed punishment and recommended that Appellant's sentences be suspended. Consequently, the judgments contain inaccuracies.

This court has the power to modify a judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

The trial court is ordered to prepare and file a *Judgment Nunc Pro Tunc* in each cause reflecting this reformation, and the trial court clerk is ordered to provide copies of those judgments to the Lubbock County Community Supervision Department.

CONCLUSION

We reform the summary portion of both judgments to reflect "Not Guilty" under Plea to Offense and to also reflect that punishment was assessed by the jury. Accordingly, as modified, the trial court's judgments are affirmed.

Patrick A. Pirtle
Justice

Do not publish.

12