# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-18-00556-CV
---

**K. J., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---
### FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
### NO. 17-0102-CPSC1, HONORABLE JOHN McMASTER, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

K.J. appeals from the trial court's order terminating her parent-child relationship with her children T.G. and K.D.J.[1] In six appellate issues, K.J. contends that the trial court violated her due process rights by failing to appoint counsel in a timely manner, by denying her a trial by jury, and by denying advisory counsel's motion for continuance, that she received ineffective assistance of counsel, and that the evidence was legally and factually insufficient to support the termination of her parental rights. We will affirm the trial court's order terminating K.J.'s parental rights.

---

[1] For the sake of privacy, we refer to the appellant and children by their initials. *See* Tex. Fam. Code § 109.002(d).

**DISCUSSION**

**Due Process**

In her first appellate issue, K.J. contends that the trial court violated her due process rights by failing to appoint counsel in a timely manner, by denying her a trial by jury, and by denying advisory counsel's motion for a continuance.

After a hearing in September 2017, at which K.J. was represented by retained counsel, the trial court issued a temporary order. Among other things, this order informed K.J. that she had a statutory right to be represented by an attorney and that she would be required to file an affidavit of indigence if she claimed indigence. In February 2018, retained counsel represented K.J. at another hearing. Then, in March and June 2018, K.J.'s counsel filed motions to withdraw. The trial court did not rule on these motions. At a hearing on June 7, the trial court appointed an additional attorney as "Advisory Counsel" for K.J. and noted that the case was set for a final hearing on July 9.

At the final hearing, K.J.'s retained attorney reurged her motion to withdraw and requested a continuance. In response, the trial court noted, "You are not off the case until a judge says you're off of it." The court further stated, "I'm not going to allow a person to withdraw if I believe that that withdrawal will substantially harm a client." After noting that "there were plenty of opportunities early on to make a jury demand" and that no demand had been made, the court denied the motion to withdraw and the motion for a continuance and proceeded with the final hearing.

K.J. now challenges the trial court's decisions to deny these motions and to hold a bench trial. However, the record before us indicates that K.J. was represented throughout this case,

2

including at the final termination hearing. Indeed, beginning about a month before trial, K.J. was represented both by retained counsel and "Advisory Counsel," both of whom were aware of the date of the final hearing.

In addition, to the extent K.J. complains that the trial court did not appoint her counsel, we note that the court was not required to appoint K.J. an attorney because K.J. never filed an affidavit of indigence. *See* Tex. Fam. Code § 107.013(d) ("The court shall require a parent who claims indigence under Subsection (a) to file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the court may conduct a hearing to determine the parent's indigence under this section."); *N.T. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00573-CV, 2017 WL 5985507, at *6 (Tex. App.—Austin Nov. 29, 2017, no pet.) (mem. op.) (holding that the trial court did not err in failing to appoint counsel for the appellant, in part because the appellant never filed an affidavit of indigence). Similarly, K.J. waived her right to a jury trial because neither she nor her attorney filed a timely jury demand. *See* Tex. R. Civ. P. 216(a) ("No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance."); *In re K.S.L.*, 538 S.W.3d 107, 113 (Tex. 2017) ("Of course rights, including constitutional rights, can be waived."); *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 438 (Tex. App.—Austin 2004, pet. denied) ("[T]he right to a trial by jury is not absolute in civil cases. A party must comply with the procedure set forth in rule of civil procedure 216: not less than thirty days before the date set for trial of the cause on the non-jury docket, the party must file a written request for a jury and pay a jury fee.").

Likewise, we cannot conclude that the trial court abused its discretion in denying the motion for continuance. *See Barton Food Mart, Inc. v. Botrie*, No. 03-17-00292-CV, 2018 WL 5289538, at \*5 (Tex. App.—Austin Oct. 25, 2018, no pet. h.) (mem. op.) ("We review a trial court's ruling on a motion for a continuance for an abuse of discretion.") (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004)). At trial, K.J.'s "Advisory Counsel" requested a continuance to have time to file a jury demand and to prepare for trial—to "actually work the case." However, as discussed above, "Advisory Counsel" was informed of the date of the final hearing about a month earlier and K.J. continued to be represented by retained counsel. In addition, the trial court found that further delay would cause "harm to the children."

Because K.J. was represented by counsel, did not file an affidavit of indigence, and did not file a timely jury demand, we cannot conclude the trial court violated K.J.'s due process or statutory rights or otherwise erred in denying her attorney's motion to withdraw or motion for continuance. Accordingly, we overrule K.J.'s first appellate issue.

**Ineffective Assistance of Counsel**

In her second issue, K.J. contends that she received ineffective assistance of counsel. We apply the two-prong *Strickland v. Washington* standard to K.J.'s claim. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail under *Strickland*, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered. *See id.*; *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017). In addition,

> Direct appeal is usually an inadequate vehicle for raising such a claim because the
> record is generally undeveloped. This is true with regard to the question of deficient

4

performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight—where counsel's reasons for failing to do something do not appear in the record. We have said that trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.

*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (cleaned up).

Here, K.J. argues that she received ineffective assistance because her attorney failed to withdraw in a timely manner and failed to adequately prepare for trial. However, the record before us does not indicate that trial counsel has been given the opportunity to explain the allegedly deficient performance. *See id.*; *In re K.K.*, No. 10-04-00303-CV, 2006 WL 561820, at *3 (Tex. App.—Waco Mar. 8, 2006, no pet.) (mem. op.) ("In a parental-rights termination case where the parent asserts on appeal the ineffective assistance of trial counsel, but nothing in the record indicates trial counsel's reasons or strategies for the complained-of conduct, the lack of a record is practically always fatal to the parent's appellate issue under current Texas law."). Moreover, we cannot rule out the possibility that it was a strategic decision for K.J.'s counsel not to apply greater pressure on the trial court to obtain a ruling on the motion to withdraw. The record before us reveals that K.J.'s counsel fully participated in the bench trial, and we cannot conclude, based on this record, that counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. Accordingly, we overrule K.J.'s second appellate issue.

5

**Grounds for Termination**

In her third, fourth, and fifth issues, K.J. contends that the evidence is legally and factually insufficient to support the trial court's findings that K.J. engaged in conduct satisfying the grounds for termination found in subsections (D), (E), and (O). *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O). "The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing the legal sufficiency of the evidence in a parental-rights-termination case, we consider all the evidence in the light most favorable to the trial court's finding and determine whether a reasonable fact-finder could have formed a firm belief or conviction that its finding was true. *See id.*; *see also In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). When reviewing the factual sufficiency of the evidence, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002). We assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the fact-finder could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

"Only one statutory ground is necessary to support a judgment in a parental-rights-termination case." *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.). Accordingly, we will limit our analysis

to subsection (E).  Subsection (E) requires proof of child endangerment, i.e., exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being.  *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).  Endangerment does not need to be established as an independent proposition but may be inferred from parental misconduct alone.  *Id.*  To constitute endangerment under subsection (E), the parent's conduct need not be directed at the child.  *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012).  Conduct may endanger a child even if it does not cause the child to suffer actual injury.  *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Boyd*, 727 S.W.2d at 533).

A parent's illegal drug use may constitute endangerment under subsection (E).  *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."); *In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied) ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under [subsection (E)].") (internal quotation marks omitted); *T.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00784-CV, 2015 WL 3393943, at *2 (Tex. App.—Austin May 21, 2015, no pet.) (mem. op.) ("It is well-established that a parent's illegal drug use may constitute endangerment.").  Moreover, "[e]vidence of criminal conduct, convictions, and imprisonment and its effect on a parent's life and ability to parent may establish an endangering course of conduct." *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.).

Further, "[c]onduct that subjects a child to life of uncertainty and instability endangers the child's physical and emotional well-being." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex.

App.—Houston [1st Dist.] 2010, pet. denied); *see In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.) ("The endangerment to the child's well-being may be inferred from parental misconduct, including conduct that subjects the child to a life of uncertainty and instability."). Missing visits can be conduct that subjects the children to instability and uncertainty and therefore endangers them; the same is true of a failure to complete a court-ordered service plan. *See In re A.R.M.*, No. 05-17-00539-CV, 2018 WL 1559820, at *10 (Tex. App.—Dallas Mar. 30, 2018, pet. denied) (mem. op.) ("[M]any factors can support an endangerment finding, including not only violence and drug use but also a parent's failure to complete a court-ordered service plan, missed visits with the child, and conduct that generally subjects a child to a life of instability and uncertainty."); *In re D.A.*, No. 02-15-00213-CV, 2015 WL 10097200, at *5 (Tex. App.—Fort Worth Dec. 10, 2015, no pet.) (mem. op.) ("[T]he risk of emotional harm from a parent's missed visits with a child may support a finding of endangerment."); *In re R.M.*, No. 07-12-00412-CV, 2012 WL 6163100, at *4 (Tex. App.—Amarillo Dec. 11, 2012, no pet.) (mem. op.) ("Evidence of Christy's inconsistent participation in visitation with the children also support[s] the trial court's finding that she engaged in conduct which endangered the children's physical or emotional well-being.").

When determining whether a parent has engaged in an endangering course of conduct, a court may consider the parent's actions and inactions that occurred both before and after the child was born. *See In re M.C.*, 482 S.W.3d at 685 ("The conduct to be examined includes what the parent did both before and after the child was born.") (internal quotation marks omitted); *In re B.C.S.*, 479 S.W.3d at 926 (same); *In re S.M.*, 389 S.W.3d at 491–92 ("[I]n considering whether a

8

relevant course of conduct has been established, a court properly may consider both actions and inactions occurring both before and after a child's birth."); *id.* at 492 ("Evidence as to how a parent has treated another child or spouse is relevant regarding whether a course of conduct under Section 161.001(1)(E) has been established."). In addition, the fact-finder may infer that a parent's future behavior will be similar to her past behavior. *See In re T.G.R.-M.*, 404 S.W.3d 7, 14 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *In re S.M.*, 389 S.W.3d at 492.

Here, the Department presented evidence that:

- K.J.'s boyfriend, T.M., was arrested for a drug offense.

- T.M. had a history of family violence, including against K.J.

- K.J. continued a romantic relationship with T.M. after he was incarcerated and released. At trial, K.J. testified that she was still seeing T.M., stating, "People who love each other just don't get rid of each other because you're going through something." Moreover, one witness testified that K.J. was still living with T.M. at the time of trial.

- K.J. refused to give her address to the Department because she alleged that the Department "harassed" her.

- One of K.J.'s drug tests came back positive for a "medium to high" level of cocaine.

- K.J. refused to take numerous drug tests.

- K.J. refused to complete her court-ordered services, asserting that she should not be required to complete them because she already completed services in a prior CPS case.

- K.J. had unsupervised contact with the children while they were in foster care in violation of a court order. When asked at trial why she violated the court order, she responded, "I'm a mother."

9

- K.J. had been arrested several times for assault; at trial, she admitted to having a felony conviction.

- When the children first began to live with their foster mother, they had had many absences from school.

- K.J. "cussed . . . out" the children's foster mother, who was K.J.'s sister, in front of the children. K.J. "called [her] all kind of names in the book, B's, ho's, dumbs and all that." After the incident, the foster mother had the court change K.J.'s visits to supervised visits.

- K.J. missed a number of visits with the children.[2]

We acknowledge that K.J. presented testimony contradicting some of the evidence summarized above. For example, K.J. testified that she had not used cocaine despite the test results. We further acknowledge that the trial court heard evidence that K.J. and her children love each other. Nevertheless, considering all the evidence in the light most favorable to the trial court's finding, we determine that the trial court could have reasonably formed a firm belief or conviction that K.J. endangered the children by posing physical risks to them and by generating instability and uncertainty in their lives. We therefore conclude that legally sufficient evidence supports the trial court's finding under subsection (E). In addition, viewing all of the evidence in a neutral light, we determine that the trial court have reasonably formed a firm belief or conviction that K.J. endangered

---

[2] Although we have considered the entire record, because this is a memorandum opinion affirming the trial court's termination order, we do not exhaustively detail the evidence. *See* Tex. R. App. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it."); *In re A.B.*, 437 S.W.3d 498, 507 (Tex. 2014) (holding courts of appeals need not detail the evidence when affirming termination findings).

the children. Therefore, we conclude that factually sufficient evidence supports the trial court's finding under subsection (E).

Accordingly, we overrule K.J.'s third, fourth, and fifth issues.

**Best-Interest Finding**

In her sixth and final appellate issue, K.J. contends that the evidence is legally and factually insufficient to support the trial court's finding that termination of her rights is in the children's best interest. *See* Tex. Fam. Code § 161.001(b)(2). We assess the best interest of the child using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These factors include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *L.R. v. Texas Dep't of Family & Protective Servs.*, No. 03-18-00125-CV, 2018 WL 3059959, at *1 (Tex. App.—Austin June 21, 2018, no pet.) (mem. op.). The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from determining that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. "While no one factor is controlling, the presence of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest." *D.M. v. Texas Dep't of Family & Protective*

11

*Servs.*, No. 03-17-00137-CV, 2017 WL 2628949, at *4 (Tex. App.—Austin June 13, 2017, no pet.) (mem. op.). "The need for permanence is the paramount consideration when determining a child's present and future physical and emotional needs." *L.R.*, 2018 WL 3059959, at *1; *see In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The goal of establishing a stable, permanent home for a child is a compelling government interest.").

As discussed above, the Department presented evidence that K.J. endangered the children by allowing them to be around T.M. and by being involved with illicit drugs. The court also heard evidence that K.J. explicitly refused to complete services or to provide her address to the Department and that she disobeyed a court order by having unsupervised visits with the children. In addition, the Department presented evidence that the children are doing well with their foster mother and having fewer school-related problems. In light of the entire record before us, we conclude that the trial court could have reasonably formed a firm belief or conviction that it is in the children's best interest for K.J.'s parental rights to be terminated, that the court could have reasonably resolved disputed evidence in favor of its finding, and that any disputed evidence is not so significant that the court could not reasonably have formed a firm belief or conviction that its finding was true. Therefore, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that the termination of K.J.'s parental rights is in the children's best interest. Accordingly, we overrule K.J.'s sixth appellate issue.

### CONCLUSION

We affirm the trial court's order terminating K.J.'s parental rights.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Toth

Affirmed

Filed:   December 28, 2018