# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00726-CR

---

**Stephen Phillip Browning, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 77689, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Stephen Philip Browning appeals from a judgment of conviction for aggravated sexual assault of his stepson, C.C. *See* Tex. Penal Code § 22.021. Appellant argues that the district court erred by denying his motion for new trial and by partially excluding one of the exhibits he offered in support of that motion. We affirm.

### BACKGROUND

Appellant was charged with intentionally or knowingly causing the penetration of C.C.'s anus by appellant's sexual organ. *See id.* The case was tried to a jury over the course of two days in April and May of 2019. C.C.'s mother, Tanya Browning, testified that she met appellant through an online dating site in 2009.[1] C.C. was seven years old at the time. Appellant

---

[1] We refer to Tanya Browning by her first name because she shares a surname with appellant's current wife, Theresa Browning.

and Tanya married in October 2010 and had two children together. Shortly after the birth of the couple's first child, C.C. told Tanya that "he and [appellant] used to lay in bed together and play the Mr. Wiener game," which Tanya understood to mean masturbation. Tanya testified that she doubted her son's statement because he was showing developmental delays—later diagnosed as an autism spectrum disorder—and wondered if he "might have dreamt it." She took no action because C.C. denied the abuse on several subsequent occasions.

Over the ensuing four years, appellant and Tanya moved from Burnet—where her family had lived at the beginning of the marriage—to Temple and then to Killeen. For the 2012 and 2013 school years, appellant was responsible for homeschooling C.C. In 2014, Tanya moved back to Burnet with her children; appellant did not follow because they were "working on their marriage." Later that year, C.C. again told Tanya of abuse by appellant. Tanya testified that he told her that "when we had lived in Temple, that [appellant] had been sexually abusing him, that he had put his penis inside [C.C.'s] anus multiple times" and "that there were times also where when [appellant] would sit in his computer chair, that he would have [C.C.] sit on his penis."

Tanya immediately informed the police of C.C.'s outcry and, several days later, took him to the Children's Advocacy Center (CAC) for a forensic interview. The interviewer, Tammy Bracewell, testified that C.C. described appellant performing oral sex on him as well as "other acts." C.C. told Bracewell that the abuse occurred while Tanya was at work and that the "oral abuse" happened "about once a month."

Shirley Nash testified that she investigated the case for Child Protective Services and interviewed C.C. and his three siblings. She concluded that C.C.'s outcry was credible and that there was no evidence appellant had abused the other children. Leona Moore, a licensed

2

specialist in school psychology, testified that she evaluated C.C. in 2018 to determine whether he was eligible for special education services. Moore testified that she recorded in her report that when asked about "frightening or traumatic memories," C.C. "shared that his dad committed suicide when he was four and mom's boyfriend hurt him in ways that he didn't want to discuss when he was seven."

The jury returned a verdict of guilty. Appellant pled true to nine enhancement paragraphs, and the district court assessed a sentence of twenty-five years' imprisonment in the Texas Department of Criminal Justice. Appellant timely filed a motion for new trial asserting that he received ineffective assistance of counsel. The district court held a hearing on the motion and heard testimony from appellant; his mother, Katherine Morton; his new wife, Theresa Browning; and his trial counsel, Billy Ray Hall. The court also admitted the exhibits attached to appellant's motion, including affidavits from Morton and Theresa Browning. Later in the hearing, appellant offered an audio recording of a pretrial strategy meeting among appellant, Hall, and others. The district court reserved its ruling on admissibility of the recording so that appellant could arrange for the recording to be transcribed. At a later hearing, the district court admitted a portion of the transcript. The district court subsequently denied the motion for new trial, and this appeal followed.

## ANALYSIS

Appellant argues in three issues that the district court abused its discretion by denying the motion for new trial alleging ineffective assistance of counsel and by refusing to admit the entire transcript.[2]

### Standard of Review

We review a trial court's ruling on a motion for new trial and the admission of evidence for an abuse of discretion. *See Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021); *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). A trial court abuses its discretion "when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). In reviewing for an abuse of discretion, "we view the evidence in the light most favorable to the court's ruling and give almost total deference to the court's findings of historical fact." *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017). When the trial court makes no findings, as here, we infer all findings necessary to support the judgment. *Id.*

### Ineffective Assistance of Counsel

To prevail on an ineffective-assistance-of-counsel claim, an appellant must show deficient performance and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). He can establish deficiency by showing that his "counsel's performance fell below an objective standard of reasonableness under prevailing professional

---

[2] Appellant argues that his trial counsel was ineffective but does not expressly challenge the denial of his motion for new trial asserting that claim. We will address his arguments as challenging that ruling because he makes essentially the same ineffective-assistance arguments that he asserted in the motion. *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").

norms, considering the facts of the case viewed from counsel's perspective at the time of the representation." *Ex parte Garza*, 620 S.W.3d 801, 808–09 (Tex. Crim. App. 2021). In analyzing counsel's performance, courts indulge a "strong presumption" that the challenged conduct fell within the "wide range of reasonable assistance" and "could be considered sound trial strategy." *Id.* at 827. To overcome that presumption, "the record must affirmatively demonstrate the alleged ineffectiveness." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).

Appellant argues that Hall's failure to call two witnesses during the guilt-innocence phase of the trial constitutes deficient performance. A claim that counsel was ineffective for failing to call witnesses requires showing that the witnesses were available and that the appellant would have benefited from their testimony. *See Ex parte Flores*, 387 S.W.3d 626, 638 n.54 (Tex. Crim. App. 2012); *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010).

The first witness, Dr. Matthew Ferrara, is a psychologist licensed in sex-offender treatment. The district court admitted an affidavit from Dr. Ferrara stating that, if called to testify, he would have testified "about the research regarding false statements by adolescents" alleging sexual abuse, particularly that repeatedly questioning a child can induce a false outcry. He would also testify that false outcries are much more common when the child's parents are divorcing. Appellant argues that he would obviously have benefited from this testimony and that there was no reason to forgo it. But Hall testified that he spoke with Dr. Ferrara and chose not to call him as a witness because Dr. Ferrara's theory—that the 2014 outcry was the result of repeated questioning by Tanya and her mother—was inconsistent with Hall's defensive theory that C.C.'s statements were not reliable because of his developmental delays. Hall was also concerned that Dr. Ferrara's testimony would open the door for the State to introduce the CAC interview recording and the testimony of a person that had made similar allegations against

5

appellant in a separate case. Viewing the whole record from counsel's perspective at the time, appellant has failed to rebut the presumption that Hall's decision not to call Dr. Ferrara "could be considered sound trial strategy." *See Garza*, 620 S.W.3d at 827.

Next, appellant argues that his counsel was ineffective for failing to call appellant's mother, Katherine Morton. The district court admitted Morton's affidavit, in which she states that she lived with appellant, Tanya, and C.C. during the relevant time and that her bedroom was next to C.C.'s, where the abuse allegedly occurred, and that she heard nothing concerning. She would have further testified that C.C. was "repeatedly asked" by his mother and maternal grandmother "if [appellant] had abused him." Morton testified at the new trial hearing that C.C. told her that he was "so tired" of his mother and grandmother's questioning and that he was "just going to tell [his mother and grandmother] 'yeah, it happened'" so that they will "leave [him] alone." Hall testified that he was aware of what her testimony would have been but that he was concerned about how she would perform as a witness. He explained that Morton testified for him at a bond reduction hearing and "she could not stay on track. When I would ask her a question, she would respond in an answer that wasn't what she was asked. She was very argumentative." Appellant argues that the transcript of the bond hearing does not support Hall's characterization, but the district court had the opportunity to view Morton's testimony at the bond reduction hearing and evidently agreed that Hall's assessment was reasonable. *See Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) ("The trial court, as factfinder, is the sole judge of witness credibility at a hearing on a motion for new trial with respect to both live testimony and affidavits."). Moreover, Hall asked Morton to wait outside during trial so that she would be eligible to be called as a witness. Hall was notified during trial that Morton "was exchanging some words with the State's witnesses out in the hallway and had to be reprimanded

6

for that." Viewing the record from counsel's perspective at the time, we conclude appellant has failed to rebut the presumption that Hall's decision not to call Morton was sound trial strategy. *See Garza*, 620 S.W.3d at 827. We overrule appellant's first and second issues.

**Admission of the Transcript**

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Appellant argues that the district court abused its discretion because the excluded portions of the transcript support his argument that Hall's representation was ineffective and, as a result, denied appellant's motion for new trial. Assuming without deciding that the district court abused its discretion, appellant has not shown how the abuse was harmful. An incorrect evidentiary ruling is generally non-constitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Non-constitutional errors require reversal only if the error affected the appellant's "substantial rights." Tex. R. App. P. 44.2(b). This means that "an error is reversible only when it has a substantial and injurious effect or influence" on the trier of fact. *See Gonzalez*, 544 S.W.3d at 373. On the other hand, we will uphold the challenged ruling if we have a "fair assurance" from an examination of the record as a whole that the error did not influence the trier of fact or had but a slight effect. *Id.*

Appellant argues that the excluded portion of the transcript should have been admitted because Hall misstates the law several times and was unaware of a pertinent fact. Specifically, Hall mistakenly thought a nurse conducted the CAC interview of C.C., and he incorrectly told appellant that he was eligible for probation or, if the trial judge declined to impose it, could be released on bond pending appeal. Appellant argues that these statements,

7

among others, show that Hall did not have a "firm command" of the facts and the governing law. *See Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990) ("It is evident that a criminal defense lawyer must have a firm command of the facts of the case as well as governing law before he can render reasonably effective assistance of counsel."). But even if Hall's statements had been incorrect, appellant has not explained how pretrial statements on matters unrelated to trial strategy affected Hall's performance at trial. *See id.* ("Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination."). We conclude that the error, if any, in excluding the entire transcript was harmless and, as a result, the district court did not abuse its discretion in denying the motion for new trial. We overrule appellant's third issue.

## CONCLUSION

Having concluded that the district court did not abuse its discretion in denying appellant's motion for new trial, we affirm the judgment of conviction.

_____
Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed: October 8, 2021

Do Not Publish